**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0595n.06

**No. 08-3622**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 21, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| NIGELARANI VAKEESAN, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF A DECISION FROM THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General of the | ) | **O P I N I O N** |
| United States, | ) | |
| | ) | |
| Respondent. | | |

BEFORE:    **CLAY and McKEAGUE, Circuit Judges; and HOLSCHUH, District Judge.**[*]

**HOLSCHUH, District Judge**. In this immigration case, Nigelarani Vakeesan ("Vakeesan") petitions for review of the Board of Immigration Appeals's ("BIA") order denying her motion to reopen removal proceedings. After finding Vakeesan to be not credible, the Immigration Judge ("IJ") denied her requests for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"), and ordered her removed to Sri Lanka. The BIA and this court affirmed the IJ's removal order. Over a year later, Vakeesan moved the BIA to reopen her removal proceedings, citing changed country conditions in Sri Lanka. The BIA denied Vakeesan's

---

[*] The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

motion to reopen, and she appealed. For the reasons below, we affirm the BIA's decision and deny Vakeesan's petition for review.

## I.  Background and Procedural History

Vakeesan is a native and citizen of Sri Lanka. She lawfully entered the United States in November 1999, but stayed beyond the date authorized in her visa. In June 2000, Vakeesan filed an application for asylum, withholding of removal, and protection under CAT. If deported to Sri Lanka, Vakeesan claimed, she would be persecuted by the Liberation Tigers of Tamil Eelam ("LTTE") because of her membership in a social group of young Tamils from Trincomalee, Sri Lanka.[2] Vakeesan claimed that she had been persecuted by the LTTE on multiple occasions before fleeing to the United States and also by Sri Lankan government authorities who falsely accused her of supporting the LTTE. In May 2001, Vakeesan was interviewed by an asylum officer. In July 2001, the Immigration and Naturalization Service ("INS") (now reconstituted as the Citizenship and Immigration Services, a component of the Department of Homeland Security ("DHS")) initiated removal proceedings against Vakeesan by filing a Notice to Appear before the Immigration Court. The IJ conducted a removal hearing, during which Vakeesan conceded that she was removable as charged in the Notice to Appear. Vakeesan also testified and presented evidence to support her

---

[2] Tamils are an ethnic group native to Tamil Nadu, a state in India, and the north-eastern region of Sri Lanka. Tamils speak their own language and have a recorded history as a distinct ethnic group going back two millennia. Tamils constitute about eighteen percent of Sri Lanka's population. James Heitzman, *Sri Lanka: A Country Study* (Russell R. Ross & Andrea M. Savada eds., Federal Research Division, Library of Congress) (1989), *available at* http://lcweb2.loc.gov/cgi-bin/query/r?frd/cstdy:@field(DOCID+lk0061).

asylum application. In December 2005, the IJ denied Vakeesan's requests for asylum, withholding of removal, and protection under CAT, and ordered her removed to Sri Lanka.

The IJ found that Vakeesan's testimony was not credible. The IJ based her conclusion on the following: inconsistencies between Vakeesan's removal hearing testimony and her written asylum application and testimony before the asylum officer; Vakeesan's omission from her asylum application of events pivotal to her claim, including alleged threatening phone calls she received from the Sri Lankan army; the sparse detail provided in her removal hearing testimony; and the lack of corroboration to support her testimony. Although 8 C.F.R. § 1208.13(a), cited by the IJ, provides that "the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration," corroboration was required, the IJ found, because Vakeesan's testimony was not credible.

The IJ further found that even if Vakeesan had presented credible claims, her application should be denied on the merits because of her failure "to establish a nexus to a protected ground."[3] (App. 291.) Moreover, the IJ found, "[t]he 2004 Country report confirms the majority of abuses are carried out by the LTTE in the northern and eastern parts of Sri Lanka," and Vakeesan failed to

---

[3] This is a reference to the need to show persecution on the grounds of "race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(1). To be statutorily eligible for asylum, an alien must establish that he or she is a refugee—one who has suffered or will suffer persecution on one of these grounds.

demonstrate, as required by 8 C.F.R. § 1208.13(b)(2)(ii), "that she could not safely internally relocate in Sri Lanka."[4]  (App. 295.)

Vakeesan appealed the IJ's decision to the BIA.  In January 2007, the BIA affirmed the IJ's decision and dismissed Vakeesan's appeal.  The BIA recounted the inconsistencies and contradictions in Vakeesan's testimony and found that "the Immigration Judge provided specific and cogent reasons to conclude that the respondent provided incredible testimony." (App. 272.) Absent credible testimony, the BIA found, Vakeesan "failed to sustain the burden of proof applicable to asylum and the more stringent burden applicable to withholding of removal."  (App. 272.) Therefore, the BIA dismissed Vakeesan's appeal.

Vakeesan appealed the BIA's decision to this court.  In December 2007, the petition for review was denied.  The court pointed out that:

> [t]he denial of an application for asylum may be reversed only where the evidence
> is so compelling that no reasonable factfinder could fail to find the requisite fear of
> persecution. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).  We conclude that
> the evidence in this case does not meet this standard.

*Vakeesan v. Mukasey*, No. 07-3112 (6th Cir. Dec. 12, 2007).  The court found that the IJ's adverse credibility determination was sufficiently supported by evidence and explained in the IJ's opinion, and that the credibility finding was "a factual determination that cannot be reversed unless the evidence compels a contrary conclusion. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)."

---

[4] 8 C.F.R. § 1208.13(b)(2)(ii) provides that "[a]n applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so."

*Id.* Therefore, because the evidence did not compel a contrary conclusion, the petition for review was denied.

On March 19, 2008, more than a year after the final administrative removal order was entered against her, Vakeesan moved the BIA to reopen her removal proceedings, citing changed country conditions in Sri Lanka. Vakeesan claimed that conditions had worsened in Sri Lanka since her removal proceedings due to a resumption of a civil war. To support her claim, Vakeesan provided five documents detailing the deepening crisis in Sri Lanka. According to that evidence, on January 2, 2008, the Sri Lankan government withdrew from a cease fire agreement with the LTTE, formalizing a return to a conflict that has been underway since 2006. The evidence details the humanitarian crisis that has accompanied the return to conflict. According to the International Crisis Group's report, more than 148,000 people have been displaced by renewed fighting in LTTE-controlled northern parts of Sri Lanka. The International Crisis Group and the U.S. Department of State agree that women are particularly vulnerable to human rights abuses. Women refugees in conflict areas and camps frequently complain of increased sexual violence and enforced sex work from soldiers and armed men. Those women arrested and detained complain of forced sex with prison guards.

The reports also indicate that ethnic Tamil non-combatants are particularly vulnerable. Displaced Tamils who have been forced to flee the war in the north face mass round-ups and arbitrary detentions by the government in response to LTTE attacks. "With the collapse of the ceasefire, the LTTE's return to terror attacks and the government's counter-terrorism measures, fear and inter-ethnic tension have grown significantly. Tamils increasingly see themselves, not the Tigers,

as the government's target." (App. 38.)  Innocent Tamils "are likely to be hounded, arrested or

detained, put in buses and sent back to the north east." (App. 38.)  The December 2006 report of the

United Nations Office of the High Commissioner for Refugees ("UNOHCR") regarding asylum

seekers from Sri Lanka recommends that "[n]o Tamil from the North or East should be returned

forcibly until there is significant improvement in the security situation in Sri Lanka." (App. 94.)

Vakeesan recognized that her evidence of changed country conditions did not rebut the IJ's

previous adverse credibility determination.  Nevertheless, Vakeesan argued, her evidence of changed

country conditions, especially in light of her alleged past persecution in Sri Lanka, is sufficient to

demonstrate prima facie eligibility for asylum.[5]   In the alternative to reopening her removal

proceedings based on changed country conditions, Vakeesan requested that the BIA exercise its sua

sponte authority to reopen her proceedings.

On April 18, 2008, the BIA denied Vakeesan's motion to reopen.  To the extent Vakeesan

argued that her removal proceedings should be reopened because of changed country conditions, the

BIA found that Vakeesan failed "to show a reasonable likelihood of success on the merits if the

---

[5] The primary focus of Vakeesan's motion to reopen is her asylum claim, as opposed to her withholding of deportation claim. "To establish eligibility for nondiscretionary withholding of deportation, the alien must show that there is a 'clear probability' that her 'life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998)).  An alien who fails to establish that she is a refugee eligible for asylum under 8 U.S.C. § 1158 will necessarily fail to satisfy the "clear probability" requirement for a withholding of deportation claim. *Id.* at 637; *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 449-50 (1987); *Mikhailevitch*, 146 F.3d at 391.  Therefore, Vakeesan's withholding of deportation claim is irrelevant unless she can demonstrate a prima facie asylum claim.

proceedings were reopened." (App. 2.) According to the BIA, Vakeesan's substantive asylum claims—that, if returned to Sri Lanka, she would likely be persecuted because of her Tamil ethnicity, her past involvement in reporting human rights abuses, and her gender—were the same as those addressed previously in her removal proceedings and found to lack credibility. Moreover, the BIA found, "it has long been established that claims based on simply wishing to avoid generalized civil strife do not give rise to eligibility for a grant of asylum, withholding, or protection under the Convention Against Torture." (App. 2.) The BIA also noted that Vakeesan failed to establish in her motion that she is a member of a statutorily recognized social group. Therefore, to the extent Vakeesan's motion to reopen was based on changed country conditions, the BIA denied that motion.

The BIA also declined to exercise its sua sponte authority to reopen Vakeesan's removal proceedings. According to the BIA, a factor in its decision not to reopen proceedings sua sponte was the fact that Vakeesan filed her motion to reopen after being taken into custody for removal by the DHS, and seemingly not because of any material change in Sri Lanka's conditions. Vakeesan appealed the BIA's decision to this court.

## II.    Standard of Review

This court reviews the BIA's denial of a motion to reopen for abuse of discretion. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006); *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004). This standard requires us to "'decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'"

7

*Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982)).

The court reviews the BIA's underlying legal conclusions *de novo*. *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005). But the court must defer to the BIA's reasonable interpretation of the statutes and regulations that it administers. *Id.*; *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).

**III.  Analysis**

**A.  Timeliness of the Motion to Reopen**

The BIA held that Vakeesan's motion to reopen "is untimely and will be denied." (App. 2.) A motion to reopen must "be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(1); *see also* 8 C.F.R. § 1003.2(c)(2). The ninety-day period for filing a motion to reopen is subject to four narrow exceptions:

> (1) where the BIA reopens the proceedings *sua sponte*; (2) where the parties agree to reopen the proceedings; (3) changed circumstances in the country of nationality of which there is new, material evidence that could not have been discovered or presented at the time of the original proceeding; and (4) certain *in absentia* decisions.

*Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) (quoting *Qeraxhiu v. Gonzales*, 206 F. App'x 476, 480 (6th Cir. 2006)); *see also* 8 C.F.R. §§ 1003.2(a), (c)(3)(ii).

In this case, Vakeesan did not file her motion within ninety days of the final administrative removal order. Both parties agree, however, that Vakeesan's motion to reopen falls within one of these exceptions, as it alleges changed conditions in Sri Lanka. *See* 8 C.F.R. § 1003.2(c)(3)(ii).

### B.   BIA's Sua Sponte Authority to Reopen

Vakeesan argues that reversal of the BIA's decision is appropriate because the BIA incorrectly found that she moved to reopen in response to being detained by the DHS for deportation. In fact, the DHS never took Vakeesan into custody. While the BIA did err by finding that Vakeesan was taken into custody for removal by the DHS, that error factored only into the BIA's decision not to exercise its sua sponte authority to reopen Vakeesan's proceedings. And the BIA's decision not to exercise its sua sponte authority is not subject to judicial review.

> We have previously held that "[t]he decision whether to invoke *sua sponte* authority [under 8 C.F.R. § 1003.2(a)] is committed to the unfettered discretion of the BIA" and therefore is not subject to judicial review. *Harchenko v. I.N.S.*, 379 F.3d 405, 410-11 (6th Cir. 2004) . . . Section 1003.2(a) "allows the BIA to reopen proceedings in exceptional situations; it does not require the BIA to do so." *Harchenko*, 379 F.3d at 411. "*Harchenko* affirmed the principle that review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Randhawa v. Gonzales*, 184 Fed. App'x 502, 503 (6th Cir. 2006) . . . .

*Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008).

Therefore, we lack jurisdiction to review the BIA's decision to forgo the exercise of its sua sponte authority. *Id.* at 724. That leaves us with jurisdiction to consider only whether the BIA abused its discretion by denying Vakeesan's motion to reopen based on changed country conditions.

### C.   Changed Country Conditions

After an alien's asylum application is denied and a final deportation order is issued, an alien may move to reopen removal proceedings "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8

9

C.F.R. § 1003.2(c)(3)(ii). Evidence of changed country conditions does not in itself warrant the reopening of an alien's removal proceedings. The evidence must be material to the alien's case, *i.e.*, it must be sufficient, if proved, to change the outcome. *See id.*; *Jaber v. Mukasey*, 274 F. App'x 469, 474 (6th Cir. 2008); *Kaur v. BIA*, 413 F.3d 232, 234 (2d Cir. 2005). Stated differently, the alien must make a prima facie showing that he or she is statutorily eligible for the relief requested. The alien must demonstrate a reasonable likelihood that, if removal proceedings are reopened, the alien will satisfy the statutory requirements for asylum. *See* 8 C.F.R. § 1003.2(c)(1) ("[A] motion to reopen proceedings . . . may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation."); *Alizoti v. Gonzales*, 477 F.3d 448, 451-52 (6th Cir. 2007); *Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986) ("[A] motion to reopen should not be granted unless the petitioner makes a prima facie showing that the statutory requirements for the underlying relief have been met.").

To be statutorily eligible for asylum, an alien must establish that she is a refugee. 8 U.S.C. § 1158(b)(1)(A); 8 C.F.R. § 1208.13. An alien qualifies as a refugee in one of two ways. 8 C.F.R. § 1208.13(b). First, the alien can show that she has suffered past persecution in her country of origin on the basis of her "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at § 1208.13(b)(1). An alien found to have suffered past persecution is presumed to have a well-founded fear of future persecution if deported to that country. *Id.* The government can rebut the presumption by showing, by a preponderance of the evidence, that a fundamental change has occurred in the country such that the alien no longer has a well-founded fear of future persecution or the alien could avoid future persecution by relocating, if reasonable, to another part

of the country. *Id.* If the presumption is successfully rebutted, the alien must establish a well-founded fear of future persecution.

Second, an alien can qualify as a refugee by demonstrating a well-founded fear of future persecution. *Id.* at § 1208.13(b)(2). If an alien establishes a well-founded fear of future persecution, the alien need not demonstrate past persecution. An alien has a well-founded fear of future persecution if:

> (A) The applicant has a fear of persecution in his or her country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion;
> (B) There is a reasonable possibility of suffering such persecution if he or she were to return to that country; and
> (C) He or she is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

*Id.* at § 1208.13(b)(2)(i). An alien does not have a well-founded fear of future persecution if the applicant could avoid future persecution by relocating, where reasonable, to another part of the country in question. *Id.* at § 1208.13(b)(2)(ii). Moreover, an alien must demonstrate that a reasonable possibility exists that he or she will be singled out individually for persecution unless:

> (A) The applicant establishes that there is a pattern or practice in his or her country of nationality or, if stateless, in his or her country of last habitual residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
> (B) The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

*Id.* at § 1208.13(b)(2)(iii). To demonstrate such a pattern or practice, the level of persecution must be extreme. *Krishnapillai v. Holder*, 563 F.3d 606, 620 (7th Cir. 2009); *see also Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005).

> "There must be a systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors." *Id.* (internal quotation marks and citations omitted). The standard for showing a pattern or practice is high because it relieves the individual alien of presenting evidence that he in particular would likely experience persecution if returned to his country and in theory would entitle everyone else from his country who belongs to the protected group to asylum in the United States. *Id.*

*Krishnapillai*, 563 F.3d at 620 (citing *Mitreva*, 417 F.3d at 765).

Therefore, to successfully move to reopen removal proceedings based on changed country conditions, an alien seeking asylum must demonstrate, with new evidence that was not previously obtainable, a reasonable likelihood that if her removal proceedings were reopened, the IJ would find either that the alien has been persecuted in the past or that the alien has a well-founded fear of future persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion.

In this case, Vakeesan's motion to reopen essentially comes down to this: with the resumption of civil war between the Sri Lankan government and the LTTE since her removal proceedings, conditions have deteriorated in Sri Lanka such that Vakeesan, as an ethnic Tamil woman, will be persecuted if deported. But as explained above, changed country conditions, standing alone, do not warrant the reopening of an alien's removal proceedings. The alien must also demonstrate prima facie eligibility for asylum, either by showing past persecution with the presumption of a well-founded fear of future persecution or, absent past persecution, by showing a

well-founded fear of future persecution. It is unclear from Vakeesan's motion to reopen and brief on appeal whether her underlying asylum claim is based on past persecution or a well-founded fear of future persecution. As will be explained below, however, regardless of whether Vakeesan's motion to reopen is construed as asserting a past persecution-based asylum claim or a well-founded fear of future persecution-based asylum claim, her motion fails.

### 1.    Past Persecution

To the extent Vakeesan's underlying asylum claim is based on past persecution, her claim is precluded by the IJ's previous adverse credibility determination. The IJ undisputedly found Vakeesan's allegations of past persecution not to be credible. The IJ specified a number of internal inconsistencies in Vakeesan's removal hearing testimony, along with contradictions between that testimony and her original asylum application and testimony before the asylum officer. The IJ found that Vakeesan's testimony was vague and sparsely detailed regarding events important to her past persecution claim. The IJ also found that, in light of the inconsistencies and contradictions in her testimony, Vakeesan failed to sufficiently corroborate her past persecution allegations. Based on this adverse credibility determination, the IJ denied Vakeesan's past persecution-based asylum claim.

The BIA and this court affirmed the IJ's adverse credibility determination. This court found that:

> [a]n applicant's testimony alone can be sufficient where it is believable, consistent, and detailed. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004). Here, Vakeesan's testimony was not believable or consistent, and she failed to submit any corroboration that should have been available to her. She argues before this court that the IJ's adverse credibility finding is not based on sufficient or complete reasons, and should not be upheld, citing *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). However, the IJ pointed out all of the above inconsistencies, thus giving specific

13

reasons for the adverse finding. The credibility finding is a factual determination that cannot be reversed unless the evidence compels a contrary conclusion. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). Under the evidence presented in this case, a reasonable factfinder might have overlooked the inconsistencies and lack of corroboration, but certainly would not be compelled to do so. Therefore, the denial of Vakeesan's asylum claim cannot be reversed.

*Vakeesan v. Mukasey*, No. 07-3112 (6th Cir. Dec. 12, 2007). Vakeesan's right to appeal the IJ's adverse credibility determination was exhausted when this court dismissed Vakeesan's appeal, and the issue cannot be revisited.

Vakeesan argues that "there has been no determination that *all* of [her] claim was not credible," and suggests that the IJ's previous adverse credibility determination does not foreclose the possibility that portions of her previous testimony were in fact credible. (Mot. to Reopen 11 (emphasis in original)). Vakeesan does not, however, identify which portions of her testimony were allegedly credible and which portions were not. Moreover, Vakeesan's "partial credibility" argument is belied by the record. The IJ did not parse Vakeesan's testimony and find some portions credible and others incredible. The IJ reviewed the *entirety* of Vakeesan's testimony and found that Vakeesan's asylum claim was not credible. The case cited by Vakeesan, *Zhao v. United States Department of Justice*, 265 F.3d 83, 94 (2d Cir. 2001), to support her argument that her credible testimony should be parsed from her incredible testimony, is distinguishable from this case. In *Zhao*, the court found that the immigration judge's decision could be read as "not passing on the truthfulness of the testimony, but rather faulting petitioner for inconsistency and generality." *Id.* More importantly, the court found that unquestioned documents fully corroborated the petitioner's testimony regarding the critical fact that his wife had been sterilized against her will. *Id.* In this

case, Vakeesan provided no evidence to corroborate her inconsistent and contradictory accounts of past persecution, even though that evidence could reasonably have been provided.

The government argues that Vakeesan's past persecution-based asylum claim fails because she failed, in her motion to reopen, to rebut the IJ's adverse credibility determination and rehabilitate her credibility. Despite the government's suggestion that the outcome might be different if Vakeesan rebutted the adverse credibility determination, we question whether Vakeesan is entitled to a second opportunity in her motion to reopen in order to revisit and attempt to repair the testimony she gave in a hearing four years ago. She had her opportunity during the removal proceedings to present the corroborative evidence and details found to be lacking, and to rectify the inconsistencies and contradictions that gave rise to the adverse credibility determination. That question is moot in this case, however, given Vakeesan's concession that her motion to reopen is devoid of any evidence to rebut the IJ's adverse credibility determination. (Mot. to Reopen 11.) Therefore, given that Vakeesan's past persecution-based asylum claim has already been found to be unbelievable, her motion to reopen, to the extent it relies on past persecution to demonstrate a prima facie asylum claim, is meritless.

### 2. Well-Founded Fear of Future Persecution

We recognize that an adverse credibility determination with respect to an alien's past persecution claim does not necessarily preclude a well-founded fear of future persecution-based asylum claim. To demonstrate a well-founded fear of future persecution, an alien need not demonstrate past persecution. *See* 8 C.F.R. § 1208.13(b)(2); *Mitreva*, 417 F.3d at 765 ("Unable to show past persecution, Mitreva faces a high burden in demonstrating that she has a well-founded fear

15

of future persecution if returned to Bulgaria."). It follows, therefore, that an alien may "prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, so long as the factual predicate of [her] claim of future persecution is independent of the testimony that the IJ found not to be credible." *Gebreeyesus v. Gonzales*, 482 F.3d 952, 955 (3d Cir. 2007) (quoting *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006)); *see also Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (noting that an adverse credibility determination in the asylum context should not "wash over" into a separate claim based on distinct facts).

In this case, however, the factual predicate of Vakeesan's well-founded fear of future persecution claim is not independent of the testimony that the IJ found to be unbelievable. *See Gebreeyesus*, 482 F.3d at 955. Vakeesan continues to rely on her accounts of past persecution in an attempt to satisfy an element of her well-founded fear of future persecution claim—individualized risk. To demonstrate a well-founded fear of future persecution, an alien generally must show that, if deported, a reasonable possibility exists that he or she will be singled out individually for persecution. 8 C.F.R. § 1208.13(b)(2)(iii). In her motion to reopen, Vakeesan relies solely on her accounts of past persecution in an attempt to show that she personally will be persecuted if returned to Sri Lanka. Vakeesan alleges that "the return to war has placed [Vakeesan] in direct and particular danger in light of her prior experiences being targeted by the LTTE." (Mot. to Reopen 11.) Vakeesan maintains, in her brief before this court, that "[i]n light of the past attacks, [she] faces near certain harm if she is returned to Sri Lanka." (Pet'r Brief 28.) Given that her accounts of past persecution have already been found to be unbelievable, Vakeesan cannot now use those accounts to support the individualized risk of persecution element of her well-founded fear claim. Absent the

16

accounts of past persecution, the record is devoid of any evidence to suggest that Vakeesan faces a reasonable possibility of being singled out individually for persecution if deported to Sri Lanka. *See Zhang v. Mukasey*, 543 F.3d 851, 854-55 (6th Cir. 2008) ("When a necessary element of [petitioner's] claim—whether she faced a risk of individual persecution—failed, so did [petitioner's] entire motion."). And as the BIA recognized, "it has long been established that claims based on simply wishing to avoid generalized civil strife do not give rise to eligibility for a grant of asylum, withholding, or protection under the Convention Against Torture." (App. 2.) Therefore, Vakeesan's well-founded fear of future persecution-based asylum claim fails. *See Zhang*, 543 F.3d at 854-55.

Vakeesan *could* have argued that the exception created by 8 C.F.R. § 1208.13(b)(2)(iii) applies in this case, making it unnecessary for her to demonstrate an individualized risk of persecution if deported to Sri Lanka. That regulation provides that:

> (iii) In evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the asylum officer or immigration judge shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if:
>
> (A) The applicant establishes that there is a pattern or practice in his or her country of nationality or, if stateless, in his or her country of last habitual residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
>
> (B) The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

8 C.F.R. § 1208.13(b)(2)(iii). An alien "may prevail on his asylum claim even without credible evidence that he is likely to be singled out for persecution if he can establish a pattern or practice of

persecution in Sri Lanka based on a protected trait (*e.g.*, ethnicity) that he shares." *Krishnapillai*, 563 F.3d at 620; *see also Abusada v. Gonzales*, 212 F. App'x 488, 495 (6th Cir. 2007) ("An applicant is not required to establish a reasonable possibility that he would be singled out individually for persecution if he shows that there is a pattern or practice in his country of persecution of a group of persons similarly situated to the applicant on the basis of one of the statutorily protected grounds."). As the Ninth Circuit explained in *Kotasz v. INS*, extreme situations can exist:

> in which members of an entire group—though perhaps not of an entire nation—are systematically persecuted. In such cases, group membership itself subjects the alien to a reasonable possibility of persecution, so that he or she will be able to satisfy the objective component of the well-founded fear standard simply by proving membership in the targeted group. As the systematic attempt to annihilate the Jews in Nazi Germany conclusively demonstrates, persecution of an entire group can render proof of individual targeting entirely superfluous.

31 F.3d 847, 852 (9th Cir. 1994).

In this case, however, Vakeesan fails to allege a pattern or practice of persecution in Sri Lanka. Nowhere in her motion to reopen or in her brief does she even mention 8 C.F.R. § 1208.13(b)(2)(iii). "[B]efore raising an immigration issue in federal court, a petitioner must normally present all reviewable issues to the BIA . . . If the petitioner fails to exhaust an issue before the BIA, that issue is normally deemed to be waived." *Khalili v. Holder*, 557 F.3d 429, 432 (6th Cir. 2009); *see also Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006); *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). Therefore, by failing to raise the issue before the BIA, Vakeesan waived any claim under 8 C.F.R. § 1208.13(b)(2)(iii).

The Seventh Circuit has held that even when an alien fails to explicitly rely on 8 C.F.R. §

1208.13(b)(2)(iii) to support a motion to reopen, the BIA is required to comply with that provision.

*Banks v. Gonzales*, 453 F.3d 449, 452-53 (7th Cir. 2006).  According to the Seventh Circuit, an

alien's failure to explicitly raise a pattern or practice claim under 8 C.F.R. § 1208.13(b)(2)(iii):

> would be a forfeiture if the regulation were one that imposed on the alien a burden
> of production, burden of persuasion, or need to object.  But it is not expressed as a
> rule of conduct for the alien.  It is addressed, rather, to "the asylum officer or
> immigration judge" and says that these public officials "shall not require the
> applicant" to provide certain evidence.  That rule governs not only the proofs at the
> hearing but also an IJ's process of reasoning, and it must be followed whether or not
> an alien draws it to the agency's attention.  A litigant's failure to remind an IJ of some
> rule assuredly does not entitle the IJ to contradict that rule and require the very sort
> of proof that the regulation says he "shall not require."

*Banks*, 453 F.3d at 452-53 (quoting 8 C.F.R. § 1208.13(b)(2)(iii)).  Contrary to the Seventh Circuit's

reading of 8 C.F.R. § 1208.13(b)(2)(iii), however, the regulation specifically *does* impose on the

alien a burden of production and persuasion because the benefit of the regulation—no need to prove

an individualized risk of persecution—applies if and only if the alien establishes through evidence

the necessary pattern or practice of persecution and the alien's inclusion in the group being

persecuted by that pattern or practice.  Therefore, we are unpersuaded by the Seventh Circuit's

argument in *Banks*, and find that the exhaustion requirement applies to claims under 8 C.F.R. §

1208.13(b)(2)(iii).

Moreover, by finding that Vakeesan's evidence demonstrates only "generalized civil strife"

in Sri Lanka resulting from the civil war, the BIA necessarily found that Vakeesan's evidence does

not demonstrate a pattern or practice of persecution of innocent Tamils in Sri Lanka.  After finding

that Vakeesan's evidence shows "generalized civil strife" in Sri Lanka, the BIA "owed no duty to

rehearse the rest of her evidence for sake of completeness." *Zhang*, 543 F.3d at 854-55 ("We do not require the Board's opinion to mention every piece of evidence before it or every logical element of a motion."). Furthermore, the BIA's finding that Vakeesan's evidence shows only generalized civil strife in Sri Lanka certainly was not irrational so as to constitute an abuse of discretion. *See Allabani*, 402 F.3d at 675. In a recent case, the Seventh Circuit applied the high standard for showing a pattern or practice of persecution to facts almost identical to those before us today:

> The background evidence that Sundararajan has submitted, including in particular the December 2006 UNHCR report documenting the mistreatment of Tamils in Sri Lanka (and which recommends that no Tamil from the northern or eastern regions of the country be forced to return) gives us pause, as it did the IJ . . . The lengthy armed conflict between the LTTE and the Sri Lankan armed forces has resulted in human rights abuses by both sides, and there is little reason to doubt that innocent Tamils have been arrested, imprisoned, and even tortured by the authorities. But our cases make clear that civil strife in a country that causes substantial hardships for an ethnic minority, some of whose members are engaged in an insurgency against the government, does not automatically render each non-combatant member of that minority a subject of persecution. *See Selimi v. Ashcroft*, 360 F.3d 736, 740-41 (7th Cir. 2004); *see also Ratnasingam v. Holder*, 556 F.3d 10, 14 (1st Cir. 2009); *Garcia v. Gonzales*, 500 F.3d 615, 618-19 (7th Cir. 2007); *Rashiah v. Ashcroft*, *supra*, 388 F.3d at 1133. Sundararajan has shown that many Tamils in Sri Lanka have suffered grave deprivations of their human rights, but the Board's conclusion that this does not rise to the level of systemic persecution of Tamils based on their ethnicity was not unreasonable. The background evidence indicates that Tamils face an extremely difficult life in Sri Lanka, but it does not reflect the extreme degree of mistreatment necessary to establish a pattern or practice of persecution. Although we are deeply concerned about the abuses that have taken place in Sri Lanka, we cannot say that the evidence Sundararajan has presented is so compelling as to permit us to disturb the Board's finding that it does not show systemic persecution of ethnic Tamils like himself.

*Krishnapillai*, 563 F.3d at 620-21.[6]

---

[6] Since Vakeesan filed her motion to reopen, the Sri Lankan government appears to have ended the civil war by defeating the LTTE in a military offensive into the LTTE-controlled regions

## IV.     Conclusion

For the reasons above, Vakeesan has failed to demonstrate a reasonable likelihood that if her proceedings were reopened, she would be able to establish eligibility for asylum.  Therefore, the BIA did not abuse its discretion by denying Vakeesan's motion to reopen, and we **DENY** her petition for review.

---

of northeastern Sri Lanka.  On May 19, 2009, after confirming the death of the LTTE's leader, the Sri Lankan President officially declared victory over the LTTE and an end to the decades long insurgency.  *Sri Lanka Says Leader of Rebels Has Died*, N.Y. TIMES, May 19, 2009, at A4.