# In re K-R-Y- & K-C-S-, Respondents

*Decided April 4, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The North Korean Human Rights Act of 2004, Pub. L. No. 108-333, 118 Stat. 1287, which provides that North Koreans cannot be barred from eligibility for asylum on account of any legal right to citizenship they may enjoy under the Constitution of South Korea, does not apply to North Koreans who have availed themselves of the right to citizenship in South Korea.

(2) The respondents, natives of North Korea who became citizens of South Korea, are precluded from establishing eligibility for asylum as to North Korea on the basis of their firm resettlement in South Korea.

FOR RESPONDENT: Judith L. Wood, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Julia A. Cline, Assistant Chief Counsel

BEFORE:   Board Panel: FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:


These cases are before us pursuant to March 13, 2006, and April 10, 2006, orders of the United States Court of Appeals for the Ninth Circuit granting the Government's unopposed motions to remand. The Government sought remand in both of these cases for full consideration of the effect, if any, of the North Korean Human Rights Act of 2004, Pub. L. No. 108-333, 118 Stat. 1287 ("NKHRA"), on each respondent's asylum application. We grant the request by the Department of Homeland Security ("DHS") for concurrent consideration of these two appeals. The appeals will be dismissed.

Both respondents are natives of North Korea and citizens of South Korea. They fled North Korea separately in the late 1990s, primarily as a result of food shortages. Each respondent eventually arrived in South Korea after stays in China (9 months for the female respondent, and 3 years for the male respondent). The respondents were granted South Korean citizenship approximately 5 or 6 months after arrival in South Korea. Upon reaching the United States and being placed in removal proceedings, each respondent filed an asylum application.

In separate decisions, both dated December 13, 2004, the Immigration Judge denied each respondent's application for asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1231(b)(3) (2000), and their requests for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), and ordered them removed to South Korea. The Immigration Judge found that each respondent's claim was not credible and noted that even accepting the facts as presented, neither respondent had met his or her burden of proving eligibility for relief. The Immigration Judge's decisions did not make specific findings regarding firm resettlement in South Korea. However, each decision specifically found that neither respondent suffered past persecution or has a well-founded fear of persecution in South Korea.

In decisions dated April 19, 2005, and May 9, 2005, we dismissed the appeal of each respondent, finding that even if credible, they both failed to sustain their burden of proving eligibility for any form of relief. In the case of the male respondent, we found that the actual acquisition of citizenship in South Korea precluded asylum as to North Korea because of firm resettlement. In decisions dated June 30, 2005, and July 18, 2005, we denied each respondent's motion to reconsider our prior decisions, finding that neither respondent had satisfied the regulatory standard for reconsideration, and that the motion in each case merely reargued the merits of the underlying appeal.

Our sole purpose on remand is to fully consider the effect, if any, of the NKHRA on the respondents' asylum applications. Therefore, we will not revisit the specific facts of these cases in detail, as they were previously set forth in our prior decisions and those of the Immigration Judge. For purposes of our decision, the pertinent facts are that neither respondent established past persecution or a well-founded fear of persecution in South Korea. The question is whether the NKHRA provides an independent basis for granting asylum to the respondents, and whether we correctly decided that the respondents were ineligible for that relief.

The pertinent provision of the NKHRA is section 302, which provides as follows:

> ELIGIBILITY FOR REFUGEE OR ASYLUM CONSIDERATION.
> (a) PURPOSE.—The purpose of this section is to clarify that North Koreans are not barred from eligibility for refugee status or asylum in the United States on account of any legal right to citizenship they may enjoy under the Constitution of [South Korea]. It is not intended in any way to prejudice whatever rights to citizenship North Koreans may enjoy under the Constitution of [South Korea], or to apply to former North Korean nationals who have availed themselves of those rights.

> (b) TREATMENT OF NATIONALS OF NORTH KOREA.—For purposes of eligibility for refugee status under section 207 of the Immigration and Nationality Act (8 U.S.C. 1157), or for asylum under section 208 of such Act (8 U.S.C. 1158), a national of [North Korea] shall not be considered a national of [South Korea].

NKHRA § 302, 118 Stat. at 1295-96.

The respondents concede that because North Koreans who enter South Korea are eligible for South Korean citizenship under the South Korean Constitution, they would usually be barred from obtaining asylum based on firm resettlement.[1]  However, they argue that under the NKHRA, South Korean citizenship does not disqualify North Koreans from asylum or refugee status in the United States, and that it would be contrary to "Congressional intent to pretermit the asylum application of a North Korean national, based on his or her status as a South Korean citizen."  In short, the respondents argue that the NKHRA provides "an exception to the firm resettlement bar."  We disagree with the respondents' interpretation of the NKHRA.

To begin, we note that there is nothing in the NKHRA or its legislative history that provides an independent basis for granting asylum or any other form of relief to a national of North Korea.  Instead, the NKHRA provides that "North Koreans are not barred from eligibility for refugee status or asylum in the United States on account of any legal right to citizenship they may enjoy under the Constitution of [South Korea]."  NKHRA § 302(a), 118 Stat. at 1295.  We interpret the plain language of this statute to mean that North Koreans cannot be denied asylum based on the fact that the South Korean Constitution gives them the right to apply for and receive South Korean citizenship.  Our interpretation is supported by the legislative history of the NKHRA.  Specifically, the legislative history provides the following regarding section 302 of the NKHRA:

> Sec. 302.  Eligibility for Refugee or Asylum Consideration—Clarifies that North Koreans are eligible to apply for U.S. refugee and asylum consideration (as anyone else is), and are not preemptively disqualified by any *prospective* claim to citizenship they may have under the South Korean constitution.  This does not change U.S. law but makes it clearer, explicitly endorsing the approach of U.S. Immigration Courts in proceedings involving North Koreans, in which their asylum claims were adjudicated with reference to the actual circumstances they face inside North Korea.  It is meant to put to rest the erroneous opinion (proposed by some State Department personnel) that, because North Koreans may be able to claim citizenship if and when they relocate to South Korea, they must be regarded as South Koreans for U.S. refugee and asylum purposes, irrespective of whether they are able or willing to relocate to South Korea.

---

[1]  The regulations provide in pertinent part that an alien "is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement."  8 C.F.R. § 1208.15 (2006).

H.R. Rep. No. 108-478(I), at 22 (2004), *as reprinted in* 2004 U.S.C.C.A.N. 1186, 1196, 2004 WL 960518 (emphasis added). By noting that aliens are "not preemptively disqualified by any prospective claim to citizenship they may have under the South Korean constitution," the legislative history confirms our interpretation that North Koreans cannot be denied asylum based on their right under the South Korean Constitution to apply for and become a citizen of South Korea. Moreover, section 302(b) of the NKHRA does not permit this country to treat North Koreans as South Koreans, irrespective of whether they are able or willing to relocate to South Korea (and subsequently take advantage of South Korean citizenship).

In the cases before us now, there is no question of *prospective* claims to South Korean citizenship; nor is there a question whether the respondents were able or willing to relocate to South Korea. Both respondents clearly were willing and able to relocate to South Korea, because they did, in fact, become citizens of South Korea before they came to the United States. The NKHRA states that it is "not intended . . . to apply to former North Korean nationals [such as the respondents] who have availed themselves of those rights," i.e., taken advantage of the opportunity to seek and accept South Korean citizenship. NKHRA § 302(a), 118 Stat. at 1295. In other words, within the contemplation of the NKHRA, the respondents are "former North Korean nationals who have availed themselves" of the right to citizenship in South Korea, and by its very terms section 302 of the NKHRA is "not intended . . . to apply" to them.[2] *Id.* Therefore, we conclude that the respondents are precluded from establishing eligibility for the relief of asylum as to North Korea because of firm resettlement.[3]

In reaching this conclusion, we have considered that each respondent has significant ties with South Korea, i.e., citizenship and children who live there. We also note that while living in South Korea, the respondents were employed, moved freely around the country, made public speeches, raised a family, and easily arranged travel to Mexico. The female respondent also

---

[2] Even if the respondents may retain North Korean nationality for some purposes, we understand the NKHRA to treat North Koreans who affirmatively acquire South Korean citizenship as being "former North Korean nationals." NKHRA § 302(a), 118 Stat. at 1295. If that were not the case, there would be little (and probably no) meaning assignable to the last clause of section 302(a) of the NKHRA.

[3] We do not know whether North Korea would recognize the respondents' acquisition of South Korean citizenship. But the respondents are now nationals of South Korea. Section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (2000), defines a refugee, in relevant part, as "any person who is outside any country of such person's nationality" and "is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution" on account of a qualifying ground. A person must qualify as a "refugee" in order to obtain asylum under section 208 of the Act. The respondents' acceptance of South Korean citizenship draws into question their eligibility for asylum relating to North Korea.

received "resettlement money" from the Government of South Korea. Despite these facts, the respondents argue that they cannot be considered firmly resettled in South Korea because the conditions of their residence there were substantially and consciously restricted. *See* 8 C.F.R. §§ 1208.15(a), (b) (2006). However, the respondents have offered no specific evidence in support of their argument, instead relying on allegations of general hardships faced by North Koreans who become citizens of South Korea. Such statements are not evidence, and in the absence of such evidence we must reject their argument. *See Singh v. INS*, 213 F.3d 1050, 1054, n.8 (9th Cir. 2000).

Finally, we note that the Immigration Judge ordered the respondents removed to South Korea, and there is no indication in the record that South Korea refuses to accept South Korean citizens who are removed from the United States, even if those citizens were born in North Korea. Therefore, we find that this case does not present any genuine issue as to a need for withholding of removal or protection under the Convention Against Torture relating to North Korea. For all of the above reasons, the respondents' appeals will be dismissed.

**ORDER:** The respondents' appeals are dismissed.