# Matter of B-R-, Respondent

*Decided May 3, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who is a citizen or national of more than one country but has no fear of persecution in one of those countries does not qualify as a "refugee" under section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (2006), and is ineligible for asylum.

FOR RESPONDENT: Matthew Boyd Weber, Esquire, Miami, Florida

FOR DEPARTMENT OF HOMELAND SECURITY: Shana Belyeu, Assistant Chief Counsel

BEFORE: Board Panel: GRANT, MALPHRUS, and MULLANE, Board Members.

GRANT, Board Member:

In a decision dated July 11, 2011, an Immigration Judge denied the respondent's applications for relief and ordered him removed from the United States. The respondent has appealed from that decision, challenging only the denial of his application for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (2006).[1] The respondent's request for oral argument is denied, and his appeal will be dismissed.

The respondent is a native and citizen of Venezuela who was admitted to the United States on June 28, 2009, as a nonimmigrant visitor and remained beyond the date of his authorized stay. In April 2010, the respondent filed an application for asylum, asserting that he was a journalist in Venezuela and was attacked and threatened by pro-Chavez groups. The Department of Homeland Security ("DHS") issued a notice to appear on May 26, 2010, charging that the respondent is removable under section 237(a)(1)(B) of the Act, 8 U.S.C. § 1227(a)(1)(B) (2006), as an alien who remained in the United States longer than permitted.

---

[1] The Immigration Judge concluded that the respondent did not establish a claim for withholding of removal from Venezuela. The respondent has declined to contest that determination on appeal.

At his hearing, the respondent conceded removability and applied for relief from removal based on his claimed fear of returning to Venezuela. The DHS submitted evidence that the respondent was a citizen of Spain by birth, because his father was born in Spain and was a citizen of that country. The Immigration Judge requested briefs from the parties on the issue of the respondent's nationality. The respondent filed a brief in which he argued that even if he was a dual national of Venezuela and Spain, he did not have to establish a well-founded fear from both countries to be eligible for asylum.

On March 11, 2011, the Immigration Judge issued an interim order, which she subsequently incorporated by reference into her July 11, 2011, decision. In the interim order, she determined that "the Respondent may be a national of Spain due to his father's citizenship and nationality" and that "if he is in fact found to be a dual national of both [Spain and Venezuela]," he would have to establish a well-founded fear of returning to both countries.

The Immigration Judge subsequently received testimony from the respondent and his wife. While the respondent did not concede the factual issue of his nationality, he admitted that his father was a citizen of Spain. Based on the evidence in the record, the Immigration Judge found that the respondent was a citizen or national of Spain, as well as Venezuela. The respondent did not express a fear of persecution in Spain. Since the respondent could safely live in Spain, the Immigration Judge concluded that he was not a "refugee," as that term is defined in section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (2006).[2]

On appeal, the respondent does not contest that he is a citizen or national of Spain based on his father's birth and citizenship. Rather, he argues that his asylum claim is not prevented by either the "safe third country" exception in section 208(a)(2)(A) of the Act or the "firm resettlement" exception in section 208(b)(2)(A)(vi). The respondent further contends that the statutory definition of a "refugee" does not require that an alien claim persecution in *every* country to which he may be returned. He interprets the phrase "any country" in section 101(a)(42) of the Act to mean that he need only fear returning to *one of* the countries in which he has nationality or citizenship.

---

[2] Section 101(a)(42) of the Act provides in pertinent part:

The term "refugee" means (A) any person who is outside *any country* of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

We agree with the respondent that the "safe third country" and "firm resettlement" exceptions do not apply to his circumstances.[3]  Nevertheless, we agree with the Immigration Judge that the respondent is not a "refugee" as contemplated by the Act, because he is a citizen or national of a country to which he does not fear returning.

The circumstance of dual nationality is not specifically addressed in section 101(a)(42) of the Act.  The legislative history of the provision affords some guidance, however.  Section 101(a)(42) of the Act was added by section 201(a) of the Refugee Act of 1980, Pub. L. No. 96-912, 94 Stat. 102, 102.  In setting forth the definition of a "refugee," Congress explicitly relied on language in the United Nations Convention Relating to the Status of Refugees, July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150, *available at* http://www.unhcr.org/3b66c2aa10.html ("Convention").[4]  *See* S. Rep. No. 96-256, at 14-15 (1979), *reprinted in* 1980 U.S.C.C.A.N. 141, at 154-55, 1979 WL 10382 (Leg. Hist.) ("Section 201(a) of the bill provides a new refugee definition which basically conforms to that of the United Nations Convention and Protocol Relating to the Status of Refugees.").  In defining the term "refugee," the Convention stated:

> In the case of a person who has more than one nationality, the term "the country of his nationality" shall mean each of the countries of which he is a national, and a person shall not be deemed to be lacking the protection of the country of his nationality if, without any valid reason based on well-founded fear, he has not *availed himself of the protection of* one of the countries of which he is a national.

Convention art. 1(A)(2) (emphasis added).

This construction of the statute is consistent with the history of the Refugee Act.  Prior to 1980, refugee status was limited to certain specific countries.  The Senate Report to the Refugee Act of 1980 also clarifies that the phrase "any country" in section 101(a)(42) of the Act referred to the elimination of the geographical and ideological restrictions in the former section 203(a)(7) of the Act, 8 U.S.C. § 1153(a)(7) (1976), which had limited conditional entrant refugees to those from certain Middle Eastern or

---

[3]  There is no bilateral agreement between the United States and Spain concerning removal of aliens, as required by the safe third country exception.  *See* section 208(a)(2)(A) of the Act.  There is also no evidence that the respondent was "firmly resettled" in Spain prior to arriving in the United States.  *See* section 208(b)(2)(A)(vi) of the Act; 8 C.F.R. § 1208.15 (2012).

[4]  The 1951 Convention was incorporated into the 1967 Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, 606 U.S.T. 267 (entered into force Oct. 4, 1967; for United States Nov. 1, 1968).  The United States is a party to the 1967 Protocol.  *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 438 n.21 (1987).

Communist countries. S. Rep. No. 96-256, at 4, 15, 1980 U.S.C.C.A.N. at 144, 155. Accordingly, the most reasonable reading of the word "any" in the "refugee" definition is to allow aliens from any country to qualify as a refugee, not just those from the Middle East or Communist countries.

In this case, the respondent has the option to reside in Spain as a citizen or national of that country. Once nationality is established, it is the alien's burden to demonstrate that the alternative country of nationality will not offer him protection. The respondent does not make an argument that he has unsuccessfully "availed himself of the protection of" Spain. Convention art. 1(A)(2). Therefore he is not a "refugee" as that term is defined in section 101(a)(42) of the Act, and he is not eligible for asylum in the United States.

"[T]he core regulatory purpose of asylum . . . is 'not to provide [applicants] with a broader choice of safe homelands,' but rather, to 'protect [refugees] with nowhere else to turn.'" *Tchitchui v. Holder*, 657 F.3d 132, 137 (2d Cir. 2011) (quoting *Sall v. Gonzales*, 437 F.3d 229, 233 (2d Cir. 2006)); *see also Matter of D-X- & Y-Z-*, 25 I&N Dec. 664, 668-69 (BIA 2012). This principle comports with the language of the 1951 Convention and is further reflected in the firm resettlement and safe third country provisions of the Act. Moreover, section 208(c)(2)(E) of the Act provides that a grant of asylum may be terminated if the alien has "acquired a new nationality and enjoys the protection of the country of his or her new nationality." These provisions all limit an alien's ability to claim asylum in the United States when other safe options are available.

The Secretary of Homeland Security has the authority to "remove the alien to *a country* of which the alien is a subject, national, or citizen unless the government of the country . . . is not willing to accept the alien into the country." Section 241(b)(2)(D)(ii) of the Act, 8 U.S.C. § 1231(b)(2)(D)(ii) (2006) (emphasis added); *see also Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 338–42 & n.1 (2005) (discussing the Secretary's removal authority, which was vested in the Attorney General prior to March 1, 2003). Considering the language and design of the statute as a whole, we read the phrase "a country" to allow the Secretary to remove an alien to any country of which the alien is a subject, national, or citizen. *See Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 212 (BIA 2007). By using "a" rather than "the," Congress indicated that an alien can physically be removed to only one country, even though there may be more than one alternative.

Regardless of the respondent's claimed fear of returning to Venezuela, he did not express any fear of persecution in Spain. Therefore the Immigration Judge properly concluded that the respondent is ineligible for asylum. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.