**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUNG KIL JANG, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 11-73587 Agency No. A099-065-047 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 6, 2015—Pasadena, California

Filed December 22, 2015

Before:  Susan P. Graber and Ronald M. Gould, Circuit
Judges, and Wiley Y. Daniel,* Senior District Judge.

Opinion by Judge Graber

---

*The Honorable Wiley Y. Daniel, Senior United States District Judge for the District of Colorado, sitting by designation.

# SUMMARY[**]

## Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of asylum, under the firm resettlement doctrine, to a native of North Korea, who relocated to South Korea.

The panel held that section 302 of the North Korean Human Rights Act of 2004, 22 U.S.C. § 7842, which states that a North Korean national "shall not be considered" a South Korean national for refugee and asylum purposes, does not preclude a finding, under 8 U.S.C. § 1158(b)(2)(A)(vi) and 8 C.F.R. § 208.15, that a North Korean has "firmly resettled" in South Korea.

## COUNSEL

Judith L. Wood (argued), Law Offices of Judith L. Wood, Los Angeles, California, for Petitioner.

Alexander J. Lutz (argued) and Dara S. Smith, Trial Attorneys, and David V. Bernal, Assistant Director, Office of Immigration Litigation, and Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GRABER, Circuit Judge:

This case presents a single legal issue of first impression: Does section 302 of the North Korean Human Rights Act of 2004 ("the Act"), 22 U.S.C. § 7842, preclude a finding that a North Korean has "firmly resettled" in South Korea, 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.15, even though he otherwise meets the requirements of firm resettlement? We answer that question "no." Accordingly, we deny the petition for asylum.

### FACTUAL AND PROCEDURAL HISTORY

Petitioner Sung Kil Jang was born in North Korea in 1977 and is a citizen of North Korea. It is undisputed that Petitioner testified credibly and that he suffered persecution in North Korea. Petitioner fled North Korea in 1998 by swimming across a river into China. He resided in China for more than a year, and then traveled briefly to Vietnam and Cambodia, before arriving in South Korea in 2000.

Once relocated in South Korea, Petitioner settled in. He attended and completed a two-year college, where he studied engineering, after which he obtained work. Petitioner remained in South Korea for more than four years and is also a citizen of South Korea. After a waiting period, South Korea issued him a passport, thus allowing him to travel. In addition, he had the right to hold property, receive education, and get public relief in South Korea. Petitioner's older sister lives in South Korea, with her husband and children, as does one of Petitioner's brothers. When asked whether he feared returning to South Korea, Petitioner responded candidly:

"It's not that I fear going back to South Korea. I do not like it. . . . I don't have fear. I don't have fear, but I hate it."

Petitioner entered the United States in 2004. The government issued him a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Petitioner conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

The immigration judge ("IJ") denied relief and ordered Petitioner removed to South Korea because Petitioner "has in fact been firmly resettled in South Korea." The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal which, as relevant here, argued that the Act prevents the firm resettlement bar from applying to asylum claims by North Koreans who have relocated to South Korea. The IJ and the BIA relied on the published decision in *In re K-R-Y-*, 24 I. & N. Dec. 133 (B.I.A. 2007).[1] Petitioner timely seeks review.

---

[1] To the BIA, Petitioner also argued, unsuccessfully, that North Korea and South Korea are a single country for immigration purposes; that Petitioner did not, in fact, firmly resettle in South Korea because he was forced to accept citizenship there and reasonably fears to return; and that the IJ failed to consider certain claims. In addition, Petitioner argued to the IJ and BIA that he was entitled to withholding of removal and CAT protection. Petitioner does not renew any of those arguments here, so we do not consider them. *See, e.g.*, *Rizk v. Holder*, 629 F.3d 1083, 1091 n.3 (9th Cir. 2011) ("[B]ecause [the petitioner] did not raise [certain arguments] in his opening brief, we deem those issues waived."); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (holding that arguments not raised in a party's opening brief generally are waived).

STANDARDS OF REVIEW

Because the BIA issued a published, precedential decision in *In re K-R-Y-*, we must defer to its interpretation of the relevant immigration statute if that statute is ambiguous and if the agency's interpretation of it is a permissible one. *Toor v. Lynch*, 789 F.3d 1055, 1059 (9th Cir. 2015). At step one of the familiar *Chevron* analysis, we ask whether, "applying the normal tools of statutory construction," the statute is ambiguous, *INS v. St. Cyr*, 533 U.S. 289, 321 n.45 (2001) (internal quotation marks omitted); we consider this question de novo, *New Edge Network, Inc. v. FCC*, 461 F.3d 1105, 1110 n.30 (9th Cir. 2006). "If the intent of Congress is clear, that is the end of the matter . . . ." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). But if the statute is ambiguous, we move to step two of the *Chevron* inquiry and consider whether the agency's interpretation permissibly construes the statute. *Blandino-Medina v. Holder*, 712 F.3d 1338, 1343 (9th Cir. 2013).

DISCUSSION

Petitioner sought asylum under 8 U.S.C. § 1158(b), which provides in relevant part:

(1) In general

(A) Eligibility

The Secretary of Homeland Security or the Attorney General may grant asylum to an alien . . . if the Secretary of Homeland Security or the Attorney General determines

that such alien is a refugee within the meaning
of section 1101(a)(42)(A) of this title.

. . . .

(2) *Exceptions*

(A) In general

Paragraph (1) shall not apply to an alien if
the Attorney General determines that–

. . . .

(vi) *the alien was firmly resettled in
another country prior to arriving in the
United States*.

(Emphases added.) "The term 'refugee' means (A) any
person who is outside any country of such person's
nationality . . . and who is unable or unwilling to return to,
and is unable or unwilling to avail himself or herself of the
protection of, that country because of persecution or a well-
founded fear of persecution on account of [a protected
ground]." *Id.* § 1101(a)(42). Thus, even a person who
otherwise meets the definition of "refugee" is not permitted
to obtain asylum in the United States if "firmly resettled" in
a non-persecuting country. The firm resettlement bar furthers
"the core regulatory purpose of asylum, which is not to
provide applicants with a broader choice of safe homelands,
but rather, to protect refugees with nowhere else to turn."
*Tchitchui v. Holder*, 657 F.3d 132, 137 (2d Cir. 2011) (per
curiam) (internal quotation marks and brackets omitted).

Congress has not defined firm resettlement, but a regulation explains the concept:

> An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes:
>
> (a) That his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or
>
> (b) That the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled. In making his or her determination, the asylum officer or immigration judge shall consider the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel

> documentation that includes a right of entry or
> reentry, education, public relief, or
> naturalization, ordinarily available to others
> resident in the country.

8 C.F.R. § 208.15. As will become important to our analysis below, neither the statute nor the regulation pegs the doctrine of firm resettlement to a finding of nationality. Rather, the considerations are practical ones designed to test whether the alien was in fact living safely, with an offer of some type of permanent resident status, and with the ability to enjoy a variety of rights and privileges in another country.

For the purpose of our review, Petitioner concedes—as the agency found—that he has "firmly resettled" in South Korea within the meaning of the statute and the regulation. He became a citizen of South Korea, remained there for more than four years—by which time his ability to travel was no longer restricted—enjoyed a wide range of rights, went to college, got a job, and had family ties. Indeed, Petitioner concedes that he would be "firmly resettled" on these facts were the country in which he resided before coming to the United States any country except South Korea. Petitioner argues that section 302 of the North Korean Human Rights Act of 2004 changes the analysis for a North Korean who flees to South Korea.

Section 302 of the Act, codified at 22 U.S.C. § 7842, provides in full:

> (a) Purpose
>
> The purpose of this section is to clarify
> that North Koreans are not barred from

eligibility for refugee status or asylum in the United States on account of any legal right to citizenship they may enjoy under the Constitution of the Republic of Korea. It is not intended in any way to prejudice whatever rights to citizenship North Koreans may enjoy under the Constitution of the Republic of Korea, or to apply to former North Korean nationals who have availed themselves of those rights.

(b) Treatment of nationals of North Korea

For purposes of eligibility for refugee status under section 1157 of Title 8, or for asylum under section 1158 of Title 8, a national of the Democratic People's Republic of Korea [North Korea] shall not be considered a national of the Republic of Korea [South Korea].

At step one of the *Chevron* analysis, we conclude that the statute is clear and that it does not affect the analysis of firm resettlement for a North Korean who flees to South Korea. We therefore do not reach step two.[2]

---

[2] As will become clear in our discussion, we rely on subsection (b), whereas the BIA relied on subsection (a), a hortatory description of congressional purpose. *In re K-R-Y-*, 24 I. & N. Dec. at 135–36. In our view, that methodology is flawed. *See District of Columbia v. Heller*, 554 U.S. 570, 577–78 (2008) (holding that, "apart from that clarifying function" of "resolv[ing] an ambiguity in the operative clause," "a prefatory clause does not limit or expand the scope of the operative clause"). But we arrive at the same result the BIA reached, and our

The operative subsection is (b), which prescribes the treatment of nationals of North Korea. Importantly, subsection (b) limits its application: "*For purposes of eligibility for refugee status* under section 1157 of Title 8, *or for asylum* under section 1158 of Title 8." (Emphases added.) Section 1158(b)(1)(A) makes an alien eligible for asylum only if "such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." To the same effect, under § 1157(c)(4), refugee status also depends on that definition.

In other words, operation of the Act depends on the definition of "refugee." To reiterate, a "refugee" is defined as "any person who is outside *any* country of such person's *nationality* . . . and who is unable or unwilling to return to" that country because of a well-founded fear of persecution. *Id.* § 1101(a)(42)(A) (emphases added). "The term 'national' means a person owing permanent allegiance to a state." *Id.* § 1101(a)(21). With respect to a person of dual nationality, it is insufficient to establish a well-founded fear of persecution in only one of the two countries. *In re B-R-*, 26 I. & N. Dec. 119, 122 (B.I.A. 2013). In other words, to receive asylum, a person of dual nationality must demonstrate a well-founded fear of persecution in *both* countries; otherwise, eligibility for asylum cannot be demonstrated because removal to the non-feared country is an available option. *Id.*

As noted earlier, the Act provides that, for purposes of asylum, "a national of [North Korea] shall not be considered a national of [South Korea]." This provision simply eliminates a potential dual-nationality barrier to asylum. A

---

holding is consistent with the purpose set out in subsection (a) of the statute.

House Report explained that 22 U.S.C. § 7842 was "meant to put to rest the erroneous opinion (proposed by some State Department personnel) that, because North Koreans may be able to claim citizenship if and when they relocate to South Korea, they must be regarded as South Koreans for U.S. refugee and asylum purposes, irrespective of whether they are able or willing to relocate to South Korea."  H.R. Rep. No. 108-478(I) (2004), *reprinted in* 2004 U.S.C.C.A.N. 1186, 2004 WL 960518, at \*22.  The text of § 7842(b) clearly achieves Congress' aim:  Because a North Korean national "shall not be considered" a South Korean national for refugee and asylum purposes, the potential dual-nationality problem cannot arise.

By contrast, the Act has no effect on the analysis of whether a North Korean has "firmly resettled" in South Korea (or anywhere else).  Indeed, the House Report noted that South Korea was, and was likely to remain, "the destination of choice for most escaping North Koreans" because of shared language, ethnicity, and history, as well as family ties in many cases.  H.R. Rep. No. 108-478(I), 2004 WL 960518, at \*16.  Nothing in the history of the Act suggests that it is meant to disturb such voluntary resettlement.  More importantly for our *Chevron* step-one consideration, the text of the Act contains no reference to firm resettlement.  And conversely, the firm resettlement statute and regulation do not refer to nationality or require an analysis of the asylum applicant's nationality.  When determining whether a person has firmly resettled, it does not matter whether the person is or is not a national of the country where resettlement is alleged to have occurred.  Instead, the regulation asks only whether the person has received "an offer" of some type of permanent status.  8 C.F.R. § 208.15; *see Maharaj v. Gonzales*, 450 F.3d 961, 976 (9th Cir. 2006) (en banc)

(holding that, in determining whether a petitioner has firmly resettled, "[t]he focus . . . remains on receipt of *an offer* of permanent resettlement"). It is irrelevant whether the person has accepted the offer; it is irrelevant whether acceptance of the offer would constitute the acquisition of nationality.

We hold, in summary, that 22 U.S.C. § 7842 is clear. It does not affect the BIA's conclusion that Petitioner has firmly resettled in South Korea.

**Petition DENIED.**