**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARGARITO RODRIGUEZ TOVAR,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney General,
*Respondent.*

No. 14-73376

Agency No.
A087-216-564

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 4, 2017
Pasadena, California

Filed February 14, 2018

Before: Dorothy W. Nelson and Stephen Reinhardt,
Circuit Judges, and George Caram Steeh,* District Judge.

Opinion by Judge Reinhardt

---

* The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

**SUMMARY**[**]

**Immigration**

The panel granted and remanded Margarito Rodriguez Tovar's petition for review of a Board of Immigration Appeals decision rejecting his application for adjustment of status.

Relying on the BIA's published opinion in *Matter of Zamora-Molina*, 25 I. & N. Dec. 606 (BIA 2011), the immigration judge and BIA rejected Rodriguez Tovar's application for adjustment of status. The agency held that, because Rodriguez Tovar was over 21 years old in biological age on the date of his father's naturalization, his F2A visa petition (for a minor child of a lawful permanent resident) immediately converted to an F1 visa petition (for an adult child of a U.S. citizen), and not to an immediate relative petition. The agency came to this conclusion even though Rodriguez Tovar was classified by statute as under 21 years old for purposes of his F2A petition, pursuant to the age calculation formula set forth by the Child Status Protection Act. The BIA concluded that Rodriguez Tovar was not eligible for adjustment of status because no visa was immediately available and that Rodriguez Tovar would be subject to removal forthwith.

The panel observed that if Rodriguez Tovar's father had remained an LPR instead of becoming a citizen, Rodriguez Tovar would have been eligible for a visa in the F2A category

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

in 2007, at which point his age under the statute would have been 20. Similarly, had he been afforded his statutory age when his father became a citizen, he would have been eligible for a visa immediately. The panel also noted that the government's position would lead to the absurd result that Rodriguez Tovar would have to wait in line for a visa abroad and not become eligible for an F1 visa until more than twenty years after he would have been eligible for an F2A visa but for his father's naturalization.

Concluding that Congress had clear intent on the question at issue, the panel did not defer to the BIA's opinion in *Matter of Zamora-Molina*. Reading the statue as a whole, the panel concluded that Congress intended "age of the alien on the date of the parent's naturalization," 8 U.S.C. § 1151(f)(2), to refer to statutory age—that is, age calculated according to 8 U.S.C. § 1153(h)(1). Under that statute, Rodriguez Tovar's age was only 19 on the date of his father's naturalization. Accordingly, the panel concluded that Rodriguez Tovar's visa application must be treated as one for an immediate relative of a U.S. citizen, for which visas are always immediately available.

## COUNSEL

Ronald Tocchini (argued) and Lilia Guadalupe Alcaraz (argued), Alcaraz Tocchini LLP, Tucson, Arizona, for Petitioner.

Jessica Dawgert (argued), Senior Litigation Counsel; Timothy G. Hayes, Trial Attorney; Cindy S. Ferrier, Assistant Director; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

REINHARDT, Circuit Judge:

This case illustrates the dangers of reading statutory provisions in isolation. The question before us is whether Margarito Rodriguez Tovar, a child of a lawful permanent resident (LPR) who was deemed by statute to be a minor child until the very day his father naturalized, still qualified as a minor on that day, or whether instead his father's naturalization transformed him on the spot from a minor into an adult. The government and the BIA have parsed individual provisions of the labyrinthine Immigration and Nationality Act to arrive at the latter position, with the effect that a parent's naturalization can cause a child to be deported forthwith and to wait for decades in a foreign land for an immigrant visa—a visa that he would have had in a short period of time if his parent had not become a citizen.

We reject this reading because, considering the relevant statutes as a whole, it is clearly not the interpretation that Congress intended. Rather, we conclude that anyone who under the relevant statutes is considered a minor child of an LPR on the date of the parent's naturalization (and who is the beneficiary of a valid petition for an immigrant visa based on that status) can obtain a visa as the minor child of a citizen following his parent's naturalization.

## BACKGROUND

### A. Legal Overview

This is a petition for review of a removal order denying Rodriguez Tovar adjustment of status to lawful permanent

resident. Adjustment of status requires, among other things, that the non-citizen have an immediately available immigrant visa. 8 U.S.C. § 1255(i)(2)(B). One way to qualify for an immigrant visa is through certain familial relationships to current LPRs or citizens. The categories of qualifying relationships include (as relevant to this case) (1) the minor child, spouse, or parent of a citizen ("immediate relative"), 8 U.S.C. § 1151(b)(2)(A)(i); (2) the adult child of a citizen ("F1") , 8 U.S.C. § 1153(a)(1); (3) the minor child or spouse of an LPR ("F2A"), 8 U.S.C. § 1153(a)(2)(A); and (4) the adult child of an LPR ("F2B"), 8 U.S.C. § 1153(a)(2)(B):

| Immediate Relative | F1 | F2A | F2B |
|---|---|---|---|
| Minor child, spouse, or parent of a citizen | Adult child of a citizen | Minor child or spouse of an LPR | Adult child of an LPR |
| § 1151(b)(2)(A)(i) | § 1153(a)(1) | § 1153(a)(2)(A) | § 1153(a)(2)(B) |

Visas are always immediately available to people in the first category—"immediate relatives" of U.S. citizens—but are limited in the other categories. Within the limited categories, visas become available on a "first-come, first-served" basis. *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2198 (2014) (plurality). To get a place in line, a non-citizen's qualifying relative must file a visa petition, which receives a priority date based on when it was filed. *Id.* at 2197–98. The Department of State's Bureau of Consular Affairs publishes a monthly Visa Bulletin that lists "current"

priority dates based on category and country of origin;[1] a visa is immediately available to a non-citizen if his priority date is on or before the corresponding date in the bulletin. *See* 8 C.F.R. §§ 245.1(g)(1), 1245.1(g)(1).

In 2002, Congress passed the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 ("CSPA"), which included various protections to let people stay longer in the more advantageous minor-child categories (immediate relative and F2A). Under one provision added by the CSPA, an F2A beneficiary's statutory age for visa purposes is calculated by subtracting, from his actual age, the number of days during which his F2A petition was pending. 8 U.S.C. § 1153(h)(1). Under another provision, a citizen's child's eligibility for immediate relative status is determined by "the age of the alien on the date on which the petition is filed." 8 U.S.C. § 1151(f)(1). Finally, under a third provision, if an LPR naturalizes while he has a pending F2A petition for his minor child, the child's eligibility for immediate relative status is determined by "the age of the alien on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2).

Sometimes the appropriate category for a visa petition changes while the beneficiary is waiting for a visa. For instance, a beneficiary can "age out" (turn 21) of the F2A category, or the sponsoring parent can naturalize, making the beneficiary no longer eligible for the LPR categories (F2A and F2B). A variety of automatic conversion provisions

---

[1] By "country of origin" we mean the country to which a non-citizen is "chargeable," which is typically the country of birth, subject to various exceptions that do not affect this case. *See* 8 U.S.C. § 1152(b), (c); 22 C.F.R. § 42.12. Both parties agree that Rodriguez Tovar is chargeable to Mexico.

govern these circumstances. Conversions based on aging out of the F2A category occur on the day a visa number becomes available in the F2A category, if the beneficiary's statutory age on that day, calculated pursuant to 8 U.S.C. § 1153(h)(1), is over 21. 8 U.S.C. § 1153(h)(3). Conversions from the LPR categories to the citizen categories occur "effective upon" the date of the parent's naturalization. 8 C.F.R. § 204.2(i)(3); *see also* 8 U.S.C. § 1154(k)(1).

The CSPA also includes a provision designed to protect adult children of LPRs. While the F1 line (for adult children of citizens) is usually shorter than the F2B line (for adult children of LPRs), sometimes the F1 line is longer. *Matter of Zamora-Molina*, 25 I. & N. Dec. 606, 614 (B.I.A. 2011). When that is true, conversion from F2B to F1 based on a parent's naturalization would mean that the adult child has to wait longer for a visa than he would have if the parent had not naturalized. *Id.* Expressing the view that immigrants should not be "penalized for becoming citizens," 148 Cong. Rec. 13744 (2002) (statement of Rep. Sensenbrenner); *id.* at 13745 (statement of Rep. Gekas), Congress adopted a provision allowing adult children of newly-naturalized citizens to opt-out of the automatic conversion and remain in the F2B category. CSPA, sec. 6, § 204(k)(2) (codified at 8 U.S.C. § 1154(k)(2)).

## B. Factual and Procedural History

Rodriguez Tovar was born in Mexico in 1983. He entered the United States in 2000, when he was seventeen years old. The next year his father—who was then an LPR—filed a petition for him to obtain an immigrant visa under 8 U.S.C. § 1153(a)(2)(A)—the F2A category for minor children of

LPRs. The petition received a priority date of April 30, 2001, but was not approved until over four years later, in mid-2005.

On July 3, 2006, Rodriguez Tovar's father became a naturalized U.S. citizen. At that time Rodriguez Tovar was 23 in biological age, but after subtracting the four years during which his visa petition had been pending he was only 19 under the age-calculation formula in 8 U.S.C. § 1153(h)(1). Had his father not become a citizen, a visa would have been available to him in the F2A category on June 1, 2007—one year after his father's naturalization—when he was 20 under § 1153(h)(1). Alternatively, if Rodriguez Tovar were considered, pursuant to 8 U.S.C. § 1151(f)(2), to be a minor at the time of his father's naturalization, a visa would have been immediately available for him as the minor child of a citizen.

In 2008, Rodriguez Tovar filed an application with USCIS for adjustment of status to lawful permanent residence. The application was denied and the government initiated removal proceedings. During the removal proceedings, Rodriguez Tovar renewed his application for adjustment of status.

The IJ and the BIA rejected Rodriguez Tovar's application, relying on the BIA's published opinion in *Matter of Zamora-Molina*, 25 I. & N. Dec. 606 (B.I.A. 2011). They held that, because Rodriguez Tovar was over 21 years old in biological age on the date of his father's naturalization, his F2A petition immediately converted to an F1 petition and not to an immediate relative petition, even though he was classified by statute as under 21 years old for purposes of his F2A petition, pursuant to the age calculation formula set forth in § 1153(h)(1). They also held that there is no opt-out

provision allowing F2A beneficiaries to remain in the F2A category after a parent's naturalization. At best, according to the IJ and the BIA, Rodriguez Tovar could choose to transfer from the F1 category to the F2B category. However, there was not a visa immediately available for Rodriguez Tovar in either the F1 or F2B categories. So, according to the IJ and the BIA, either way he would not be eligible for adjustment of status, but would be subject to removal forthwith and a very lengthy period of waiting for a visa in a foreign land.

Everyone agrees that if Rodriguez Tovar's father had remained an LPR instead of becoming a citizen, Rodriguez Tovar would have been eligible for a visa in the F2A category on June 1, 2007, at which point his age under the statute would have been 20. Similarly, had he been afforded his statutory age when his father became a citizen, he would have been eligible for a visa immediately. However, the government's position is that because his father decided to become a citizen when he did, Rodriguez Tovar was not eligible for either visa and may now be deported forthwith and must wait in the F1 line abroad.

The practical implications of the government's position are hard to overstate. We do not know exactly when Rodriguez Tovar will be eligible for an immigrant visa in the F1 category, because the government does not estimate when visas will become available for certain priority dates; rather, each year it determines what priority dates are now eligible for visas. However, as of January 1, 2018—more than ten years after Rodriguez Tovar would have been eligible for a visa had his father not naturalized—he still has not reached the front of the F1 line. In fact, during those ten-and-a-half years the availability date for people coming from Mexico through the F1 line has advanced just over five years (from

January 1, 1991 to May 1, 1996).**[2]** Rodriguez Tovar's priority date is just under five years past the current availability date, so if the current pace continues he will not be eligible for an F1 visa until December 2027, more than twenty years after he would have been eligible for an F2A visa but for his father's naturalization.

In fact, there is reason to believe that it may take even longer. The government represented at oral argument that "hundreds of thousands" of visa petitions were filed right around the same time as Rodriguez Tovar's petition due to a statutory sunset date for certain adjustment of status provisions. As the rate at which the availability date advances depends on the number of petitions filed in each of the intervening years, the wave of applications filed prior to April 30, 2001, will likely cause a significant further backlog, contributing to even longer delays in this already interminable process.

In sum, the government's position is that because Rodriguez Tovar's father became a citizen, Rodriguez Tovar must now wait decades longer for a visa than if his father had remained an LPR. In the meantime the government seeks to deport him to Mexico, with any future return subject to unforeseeable modifications to the current immigration laws. As we explain in the remainder of this opinion, the correct

---

**[2]** *Compare* U.S. Dep't of State, *Visa Bulletin for June 2007* (May 11, 2007), *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2007/visa-bulletin-for-june-2007.html, *with* U.S. Dep't of State, *Visa Bulletin for January 2018* (Dec. 11, 2017), *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2018/visa-bulletin-for-january-2018.html.

interpretation of the statute does not lead to this absurd result, but rather to his entitlement to an immediately available visa.

## DISCUSSION

In order to determine if Rodriguez Tovar has an immediately available visa—rather than being deported and required to wait twenty years, or possibly even more, before being eligible for a visa, simply because his father became a citizen—we must determine under which category his petition actually falls. The BIA found, and the government asserts, that Rodriguez Tovar falls under the F1 category, a category in which there is no currently available visa. We disagree, and instead conclude that Rodriguez Tovar's visa application must be treated as one for an immediate relative of a U.S. citizen, for which visas are always immediately available.[3] We arrive at this conclusion by employing "'traditional tools of statutory construction'" which demonstrate beyond any question "that Congress had a clear intent on the question at issue." *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir. 2003) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,

---

[3] The government suggests that Rodriguez Tovar waived any claim to immediate relative status by not raising it before us, even though the BIA ruled on the issue. However, immediate relative status is not a separate claim that can be waived. Rodriguez Tovar's sole claim is that he is eligible for adjustment of status. Resolving that claim requires us to determine into which category his visa application falls, and in so doing "[w]e are not bound by a party's concession as to the meaning of the law." *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc). Moreover, even if immediate relative status were a separate, waivable claim, we could reach it in this case because the government briefed the issue. *See In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991).

467 U.S. 837, 843 n.9 (1984)); *see also Sung Kil Jang v. Lynch*, 812 F.3d 1187, 1190 (9th Cir. 2015). Moreover, the irrationality of the result sought by the government shows conclusively that there is only one possible answer to the question before us. Accordingly, we do not defer to the BIA's opinion in *Matter of Zamora-Molina*, 25 I. & N. Dec. 606.[4]

## A.  Plain Language

Rodriguez Tovar was the beneficiary of a valid F2A petition (as the minor child of an LPR) on the day his father naturalized. Therefore, his petition's conversion to another category is governed by 8 U.S.C. § 1151(f)(2). Whether his visa petition should be treated as an immediate relative petition (minor child of a citizen) or an F1 petition (adult child of a citizen) depends on the meaning of the phrase "the age of the alien on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2). If his "age" for purposes of that provision is less than 21, then he is the minor child of a U.S. citizen and entitled to an immediate immigrant visa. If his "age" for purposes of that provision is 21 or over, then he is an adult child and must leave the country and wait in the decades-long F1 line. According to the BIA and the government, "age" means biological age, which would make Rodriguez Tovar twenty-three years old on the relevant date. However, reading the statute as a whole, we readily conclude that Congress intended "age of the alien on the date of the

---

[4] Even had we found the statute ambiguous we would not have deferred to the BIA's interpretation because the BIA denied the existence of any ambiguity in the statute. *See Gila Rivera Indian Cmty. v. United States*, 729 F.3d 1139, 1149 & n.11 (9th Cir. 2013); *Negusie v. Holder*, 555 U.S. 511, 521 (2009); *see also* Daniel J. Hemel & Aaron L. Nielson, Chevron *Step One-and-a-Half*, 84 U. Chi. L. Rev. 757 (2017).

parent's naturalization" to refer instead to statutory age—that is, age calculated according to 8 U.S.C. § 1153(h)(1). Under that statute, Rodriguez Tovar's age was only 19 on the date of his father's naturalization for purposes of § 1151(f)(2).

We start with the fact that the text of § 1151(f)(2), standing alone, does not say which age controls, notwithstanding the government's attempt to suggest that "Congress mandated that 'the [chronological] age of the alien on the date of the parent's naturalization' matters." (alteration in brief). The word "chronological" appears nowhere in the statute.

When interpreting the language of a statute we do not look at individual subsections in isolation. Instead, "when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (internal citations and quotation marks omitted). The provision in question, 8 U.S.C. § 1151(f)(2), deals specifically with conversions from the F2A category to immediate relative status—it applies to "petitions under section 1154 of this title initially filed for an alien child's classification as a family-sponsored immigrant under section 1153(a)(2)(A) of this title" that are "later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i)." 8 U.S.C. § 1151(f)(2). Therefore, the statute's direction to identify "the age of the alien on the date of the parent's naturalization" must be read in light of the fact that every person to whom § 1151(f)(2) applies will, on that date, be the beneficiary of an F2A petition previously filed by a parent or spouse.

An F2A beneficiary's age is calculated pursuant to the formula in 8 U.S.C. § 1153(h)(1): "For purposes of subsection[] (a)(2)(A)" whether someone is a minor is determined by subtracting from his biological age "the number of days in the period during which the applicable petition described in paragraph (2) was pending." Nothing in the text of 8 U.S.C. § 1153(h)(1) precludes this formula from applying to F2A beneficiaries who are potentially eligible for visas due to a parent's naturalization to the same extent that it applies to F2A beneficiaries who are potentially eligible for visas due to getting to the front of the F2A line.

Therefore, for any person subject to 8 U.S.C. § 1151(f)(2), age on the date of his parent's naturalization for visa purposes is biological age on that date reduced by the number of days during which his F2A petition was pending. Accordingly, anyone who qualified as a minor child for purposes of an F2A visa on the date of his parent's naturalization also qualifies as a minor child for purposes of obtaining an immediate relative visa based on that naturalization.

The government asserts that the age-calculation formula in 8 U.S.C. § 1153(h)(1) cannot apply to 8 U.S.C. § 1151(f)(2) because neither provision directly references the other. However, the government ignores the role of 8 U.S.C. § 1153(a)(2)(A) in tying the two provisions together. Section 1153(h)(1)'s age adjustment formula applies to petitions filed under § 1153(a)(2)(A). Section 1151(f)(2), in turn, deals exclusively with the conversion of petitions filed under § 1153(a)(2)(A). The cross-references found in § 1153(h)(1) define the class of people who may take advantage of the age-reduction provision, but they do not limit the circumstances in which the reduced age is relevant.

An explicit cross-reference is unnecessary when the three provisions are so closely related and form a cohesive whole. An F2A beneficiary's statutory age, and not his biological age, thus determines to which category his petition is converted upon his parent's naturalization.

## B. Other Provisions

Our conclusion that this is the correct interpretation of "age" in 8 U.S.C. § 1151(f)(2) is buttressed by other statutory and regulatory provisions. First, the history of the regulations and statutes governing automatic conversion of visa petitions upon a parent's naturalization demonstrates that at the time the CSPA was passed, both the Department of Justice and Congress understood that petitions for minor children of LPRs would convert to petitions for minor children of citizens while petitions for adult children of LPRs would convert to petitions for adult children of citizens. Second, the CSPA included an opt-out provision for F2B to F1 conversions but no opt-out provision for conversions away from F2A—a decision that makes sense only if F2A petitions always convert to immediate relative petitions upon the parent's naturalization.

### 1.   Automatic Conversion Provisions

The regulation governing automatic conversion of visa petitions upon the sponsoring parent's naturalization was first adopted in 1965. At that time, there was no distinction between visa petitions for minor children of LPRs and adult children of LPRs—both fell into a single F2 category for "the spouses, unmarried sons or unmarried daughters" of LPRs. Act of Oct. 3, 1965, Pub. L. No. 89-236 sec. 3, § 203(a)(2), 79 Stat. 911, 913 (codified at 8 U.S.C. § 1153(a)(2) (1970)).

To implement this categorization and explain what happened when the parent of an F2 beneficiary naturalized, the Department of Justice adopted a regulation that dictated how F2 petitions would be divided into immediate relative and F1 petitions:

> Effective upon the date of naturalization of a petitioner who had been lawfully admitted for permanent residence, a currently valid petition according preference status under [8 U.S.C. § 1153(a)(2)] to the petitioner's spouse, unmarried son, or unmarried daughter, shall be regarded as approved to accord status as an immediate relative under [8 U.S.C. § 1151(b)] to the spouse, and unmarried son or unmarried daughter who is under 21 years of age, and to accord preference status under [8 U.S.C. § 1153(a)(1)] to the unmarried son or unmarried daughter who is 21 years of age or older.

Implementation of Act of Oct. 3, 1965, 30 Fed. Reg. 14772, 14775 (Nov. 30, 1965) (codified at 8 C.F.R. § 204.5(c) (1966)).

In 1990, Congress divided the F2 category into its current structure: F2A (spouses and minor children of LPRs) and F2B (adult children of LPRs). Immigration Act of 1990, Pub. L. No. 101-649, sec. 111, § 203(a)(2), 104 Stat. 4978, 4986 (codified at 8 U.S.C. § 1153(a)(2)). In order to implement that statute, the Department of Justice amended the regulation to read:

> Effective upon the date of naturalization of a petitioner who had been lawfully admitted for permanent residence, a currently valid petition according preference status under [8 U.S.C. § 1153(a)(2)] to the petitioner's spouse and unmarried children under twenty-one years of age shall be regarded as having been approved for immediate relative status under [8 U.S.C. § 1101(b)]. Similarly, a currently valid petition according preference status under [8 U.S.C. § 1153(a)(2)] for the unmarried son or daughter over twenty-one years of age shall be regarded as having been approved under [8 U.S.C. § 1153(a)(1)].

Petition to Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant, 57 Fed. Reg. 41053, 41063 (Sept. 9, 1992) (codified as amended at 8 C.F.R. § 204.2(i)(3)).

The principal change effected by this amendment was to reorganize the regulation to match the division of the F2 category into the F2A and F2B categories. Whereas the original version of the regulation recognized a single category of petitions (F2) to be divided into two categories post-naturalization (immediate relative for spouses and minor children and F1 for adult children), the amended version recognized that the categories were already divided and now required only a one-to-one conversion: F2A petitions would be converted to immediate relative petitions, and F2B petitions would be converted to F1 petitions.

|  | Parent is an LPR (pre-1990) | Parent is an LPR (post-1990) | Parent is a Citizen |
|---|---|---|---|
| **Minor Child** | F2 | F2A | Immediate Relative |
| **Adult Child** | | F2B | F1 |

While the amended regulation, like the original regulation, cites 8 U.S.C. § 1153(a)(2) generally without specifically citing paragraphs (A) or (B), the first sentence of the amended regulation implicitly refers to § 1153(a)(2)(A) and the second sentence implicitly refers to § 1153(a)(2)(B). Congress shared this understanding of the amended regulation when it adopted the CSPA. One provision of the CSPA codified the second half of the regulation (conversions from F2B to F1) in order to create an exception to it (which we discuss further in the next section). In so doing, Congress explicitly cited § 1153(a)(2)(B) where the regulation had done so only implicitly:

> Except as provided in paragraph (2), in the case of a petition under this section initially filed for an alien unmarried son or daughter's classification as a family-sponsored immigrant under [8 U.S.C. § 1153(a)(2)(B)], based on a parent of the son or daughter being an alien lawfully admitted for permanent residence, if such parent subsequently becomes a naturalized citizen of the United States, such petition shall be converted to a petition to classify the unmarried son or

> daughter as a family-sponsored immigrant under [8 U.S.C. § 1153(a)(1)].

CSPA, sec. 6, § 204(k)(1), 116 Stat. at 929 (codified at 8 U.S.C. § 1154(k)(1)).

Together, the amended regulation and the statutory provision added by the CSPA demonstrate a clear understanding of the relationship between the various categories: F2A petitions convert to immediate relative petitions, and F2B petitions convert to F1 petitions. Neither the regulation nor the statute authorizes the result the government advocates here: conversion of an F2A petition into an F1 petition.

## 2.  Opt-Out Provision

The CSPA also included a provision allowing adult children to opt-out of the effects of an automatic conversion from F2B to F1. CSPA, sec. 6, § 204(k)(2) (codified at 8 U.S.C. § 1154(k)(2)). Congress's reason for adopting this provision was to prevent LPRs from being "penalized for becoming citizens" by having to wait longer for their adult children to obtain immigrant visas. 148 Cong. Rec. 13744 (2002) (statement of Rep. Sensenbrenner); *id.* at 13745 (statement of Rep. Gekas).

A similar opt-out provision for F2A to F1 conversions would avoid the absurd result suggested by the government in this case, in which Rodriguez Tovar can now be deported and must wait decades longer for a visa just because his father naturalized. Congress, however, included no such provision in the CSPA. In order to justify their interpretation of the statute, the government and the BIA are forced to

characterize the failure to include such a provision as a Congressional oversight. *Matter of Zamora-Molina*, 25 I. & N. Dec. at 614. On our interpretation, however, Congress did not overlook anything because it is *always* better to be the minor child of a citizen (for whom there are no limits on the number of visas available) than to be the minor child of an LPR. If a minor child stays a minor child despite the parent's naturalization, then an opt-out provision parallel to 8 U.S.C. § 1154(k)(2) for F2A beneficiaries would have no purpose. Given a choice, we will presume that Congress acts competently and understands the implications of the legislation it passes. Its decision not to adopt an opt-out provision therefore supports our interpretation of the statute, on which F2A petitions always convert to immediate relative petitions.

The government takes the position that Rodriguez Tovar could exercise the opt-out provision to transfer to the F2B category rather than the F1 category—he just may not remain in the F2A category. *Matter of Zamora-Molina*, 25 I. & N. Dec. at 613–14. This interpretation of the opt-out provision does not reduce the absurdity of the government's position in this case, because it would likely take even longer for Rodriguez Tovar to be eligible for an F2B visa than for an F1 visa. In addition, the government's interpretation is difficult to square with the text of the statute, which says that if a beneficiary opts out of automatic conversion, "any determination with respect to the son or daughter's eligibility for admission as a family-sponsored immigrant shall be made as if such naturalization had not taken place." 8 U.S.C. § 1154(k)(2). Had Rodriguez Tovar's father not naturalized, Rodriguez Tovar would be eligible for a visa in the F2A category, not the F2B category. An F2B visa is therefore not the but-for result that the statute contemplates. This problem

with the government's interpretation further strengthens our conviction that Congress believed that F2A beneficiaries would never need to opt out, because they would always convert to the most advantageous category—immediate relatives of U.S. citizens.

## CONCLUSION

Our interpretation of 8 U.S.C. § 1151(f)(2) makes sense within the context of the whole CSPA. Anyone who is treated as a minor child of a lawful permanent resident for purposes of an F2A petition is treated as a minor child of a citizen when the parent naturalizes, and no one is penalized just because his parent became a citizen. The government's interpretation leads to the absurd result that Rodriguez Tovar's father's naturalization causes the deportation of his son, who is then compelled to wait for decades in a foreign land before he can return—despite the fact that had his father simply remained an LPR, Rodriguez Tovar would have been eligible for a visa within a year. That can hardly have been Congress's intent.

"[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Accordingly, we conclude "that Congress had a clear intent on the question at issue," *The Wilderness Soc'y*, 353 F.3d at 1059: children of LPRs may take advantage of the age-calculation formula in 8 U.S.C. § 1153(h)(1) for purposes of converting to immediate relative status under § 1151(f)(2) when their parents naturalize.

In other words, "age" in 8 U.S.C. § 1151(f)(2) refers unambiguously to age as calculated under 8 U.S.C. § 1153(h)(1). We reject the BIA's contrary holding in *Matter of Zamora-Molina*, 25 I. & N. Dec. 606, as well as the district court's parallel reasoning in *Alcaraz v. Tillerson*, No. 2:17-cv-457-ODW (C.D. Cal. July 26, 2017). The petition for review is granted and the case is remanded to the BIA with instructions to find that Rodriguez Tovar has an immediately available visa as the immediate relative of a U.S. citizen and to conduct further proceedings regarding the other requirements for adjustment of status.

**GRANTED** and **REMANDED**.