**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES CHRISTIAN WERTHMANN, | No. 05-75580 |
| Petitioner, | Agency No. A073-876-675 |
| v. | **MEMORANDUM**[*] |
| WILLIAM P. BARR, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 15, 2019
San Francisco, California

Before: McKEOWN and W. FLETCHER, Circuit Judges, and EZRA,[**] District
Judge.

James Christian Werthmann ("Werthmann") filed a habeas petition in 2003

claiming he was a U.S. citizen and challenging a removal order issued by the

Board of Immigration Appeals ("BIA") in May 2002. The habeas petition was

pending as of the effective date of the REAL ID Act of 2005 and was automatically

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

converted into the instant petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252. Due to what appears to be severe injustice in this case, we remand to the BIA to consider reopening.

Werthmann's story could have been plucked from the pages of a Kafka novel. Born on or around December 15, 1979, in Tijuana, Baja California, Mexico, Werthmann was adopted by two U.S. citizens—Olive Irene Canady Werthmann ("Ann Irene") and Florian Werthmann ("Florian")—when he was thirteen months old. *See* AR 1052 (Guam adoption order), 1165–66 (1979 Mexican birth registration); AR 1166 (indicating a stamp of February 11, 1981); *see also* AR 350 (Florian testifying that Ann Irene "got [Werthmann] in Mexico when he was 13 months old"). Ann Irene and Florian adopted a daughter, Julia, at the same time. AR 1062. They hired a Mexican attorney, who handled the adoptions, and received birth registrations from Mexico that list the children's parents as Ann Irene and Florian Werthmann. AR 1062, 1165–66. Ann Irene and Florian believed the birth certificates were legally sufficient to recognize the adoption, and, therefore, they would not receive a separate adoption order. AR 1062.

In 1981, after the adoptions, Ann Irene brought Werthmann and their other adopted children to the Marshall Islands where Florian, a retired Colonel and medical doctor in the U.S. Army, was providing surgical services. AR 1062. In

2

1982, the family moved back to Indio, California, for a brief period of time during which they adopted another child, Mark, in Tijuana, Mexico, again through Mexican counsel. AR 1062. The family moved back to the Marshall Islands in 1982 and to Guam in 1983, where they resided for the next nine years. AR 1062. While in Guam, Ann Irene and Florian adopted two children from the Marshall Islands. AR 1060, 1062.

At that time, citizenship was not automatic for the adopted children of two U.S. citizen parents. Florian and Ann Irene obtained U.S. citizenship for the two children they adopted from the Marshall Islands with the aid of an attorney. AR 1062. This attorney also advised them to seek lawful permanent resident status for Werthmann, Julia and Mark. AR 1062. Because Florian and Ann Irene did not have adoption orders for the three children, the attorney advised them to re-adopt the children in Guam. AR 1063. On January 14, 1991, the Superior Court of Guam issued adoption orders for the three children. AR 1051–53, 1062; Habeas Petition Exhibit G (adoption order). Werthmann's adoption order indicates that Werthmann was abandoned in Tijuana by his "natural parents . . . soon after his birth" and adopted by Florian and Ann Irene Werthmann. AR 1052. It states that Werthmann had been in the "custody and care" of his adoptive parents "from age two until [January 16, 1991]." AR 1052. Werthmann was eleven years old on the date of this order. The attorney hired by Florian and Ann Irene was then supposed

to proceed to file for permanent resident status for Werthmann, Julia and Mark. AR 1063.

By February 1992, the family had moved to Cathlamet, Washington. AR 1062. Because Florian was a retired Colonel in the U.S. Army, the family was permitted to travel between Guam and the continental United States via military transport. AR 605, 1062. There is no record of Werthmann's admission to the United States when the family moved from Guam to Washington in 1992.

Within one month of their arrival in Washington, Florian learned he had colon cancer and began a long process of treatment and recovery. AR 1063. After his recovery, he cared for Ann Irene, who had failing health. Ann Irene died in November 1996. AR 1063. As a result of these illnesses, Florian did not follow up with the attorney regarding Werthmann, Julia and Mark's applications for permanent resident status during this time period. AR 1063.

I. Visa Petition and Application for Adjustment of Status

On September 25, 1997, when Werthmann was seventeen years old, Florian submitted a Form I-130 petition for an immediate relative visa on behalf of Werthmann to the former Immigration and Naturalization Service ("INS"). AR 605–07. Werthmann simultaneously submitted a Form I-485 Application for Adjustment of Status. AR 608–11. Around the same time, Florian also submitted a Form I-130 Petition for Julia and Mark, and Julia and Mark submitted Form I-

4

485 applications for adjustment of status. AR 605, 617 (indicating Julia's application was filed on August 25, 1997). Mark's application was approved, and he received permanent resident status on June 18, 1998. AR 1070.

On March 25, 1999, Werthmann received a notice of an interview with INS regarding his application for adjustment of status. AR 615. The interview was scheduled to take place on May 3, 1999. AR 615; Habeas Petition Exhibit K (interview notice). Werthmann's interview was consolidated with his sister Julia's interview. AR 617, 622 (indicating an interview date for Julia of May 3, 1999), 624 (indicating an interview date for Werthmann of May 3, 1999).

On May 11, 1999, INS approved Julia's application for adjustment of status and granted her permanent resident status. AR 620, 622. The administrative record includes what appears to be a similar approval form for Werthmann. The form states that "Status as a lawful permanent resident of the United States is accorded: James C Werthmann." AR 624. However, in contrast to Julia's form, Werthmann's form is not signed, dated or notarized by INS. AR 624.

## II. Removal Proceedings

On September 30, 1999, Werthmann was playing with matches in the garage of the family house when the house caught on fire. AR 319, 324, 1097. On March 29, 2000, Werthmann entered a plea of "no contest" to a felony arson charge in violation of California Penal Code § 452(b) and was sentenced to five years

probation. AR 1096–1105. The judgment indicates that if Werthmann complied with the probation terms for two-and-a-half years, the court would consider reducing the charge to a misdemeanor. AR 1096, 1100. A little over a year later, on May 14, 2001, Werthmann's conviction was reduced to a misdemeanor pursuant to California Penal Code § 17(b)(3). AR 707–08.

On March 30, 2000, the day after Werthmann's "no contest" plea, INS issued a Notice to Appear ("NTA") and placed Werthmann in removal proceedings. AR 1216–18. The NTA alleged Werthmann was a native and citizen of Mexico who entered the United States on February 5, 1992 and had not been admitted or paroled. AR 1218. It also alleged, based on the arson conviction, that he had been convicted of a crime involving moral turpitude. AR 1218.

A. Proceedings Before the Immigration Judge (May–December, 2000)

An Immigration Judge ("IJ") held nine hearings before issuing a decision. *See* AR 15–500. During the first hearing, held on May 24, 2000, the IJ noted the pending visa petition in Werthmann's file and asked the INS attorney if Werthmann had an approved visa petition. AR 37–38. The INS attorney explained that Werthmann's file contained an interview notice on his adjustment application, but "[i]t doesn't appear that anyone showed up and nothing happened so it doesn't look like it was approved." AR 38; *see also* AR 36, 39. The INS attorney went on to explain that the file did not contain copies of Werthmann's I-

6

130 petition and I-485 application. AR 39. The attorney stated he was "really at kind of a loss as to what actually happened here." AR 39. When asked if he went to the adjustment interview, Werthmann responded, "I'm sure I did." AR 40.

At a hearing on June 6, 2000, an INS attorney indicated she still did not have any documentation regarding Werthmann's application for adjustment of status, but it "appear[ed]" as though the I-130 visa petition had been approved because INS "wouldn't have continued on with the application process." AR 149; *see also* AR 147–51 (full hearing). The IJ asked, "So is he eligible for adjustment of status today based on his illegal entry and the availability of 212(h) [waiver of inadmissibility] perhaps?" AR 149. The INS attorney responded, "Perhaps, your Honor, yes. Yes, it appears as though he would be." AR 149.

At a hearing on June 21, 2000, INS again stated that "[i]t appears [Werthmann] may be eligible" for adjustment of status. AR 167; *see* AR 162–70 (full hearing). The IJ requested a "definitive answer" at the next hearing. AR 167. INS again conceded that Werthmann would be eligible for a waiver of inadmissibility. AR 167–68.

At a hearing on August 7, 2000, the IJ requested that Werthmann and INS come to an agreement before the next hearing regarding Werthmann's eligibility for adjustment of status. AR 224–27. At a hearing on October 23, 2000, Werthmann's attorney stated that he had "not been able to recover from the family

7

an approval notice of the I-130." AR 257; *see* AR 255–61 (full hearing). The INS attorney stated that INS still did not have any information regarding the adjudication status of Werthmann's visa petition. AR 258–61.

Seven days later on October 30, 2000, while Werthmann was in removal proceedings, Congress passed the Child Citizenship Act of 2000 making citizenship "automatic" for certain adopted children of U.S. citizens. Child Citizenship Act of 2000, PL 106–395, October 30, 2000, 114 Stat 1631. The Act applies only to adopted children who are under the age of eighteen. *See* 8 U.S.C. § 1431. When the Act was passed, Werthmann was twenty years old.

At a hearing on October 31, 2000, INS still was unable to find any documentation regarding Werthmann's I-130 visa petition. AR 278; *see* AR 276–84 (full hearing). INS agreed to proceed as if Werthmann had an approved visa petition "with the understanding that if [INS] did find out more information from Exams or other information to argue in the contrary that we'd be allowed to do that at a later date." AR 278. Werthmann's attorney stated that he spoke with the visa attorney who handled Werthmann's and his siblings' I-130s, and she stated "all of them were granted and she believes that Mr. Werthmann's was granted as well, but he did not receive a green card in the mail." AR 278.

At a hearing on December 8, 2000, INS stipulated that it had approved Werthmann's I-130 visa petition. AR 310–11. Both Werthmann and Florian

8

testified at the hearing. Werthmann testified that Florian and Ann Irene were his adoptive parents and that he had lived with them since he was a toddler. AR 313–15, 339; *see* AR 303–68 (full hearing). He testified that he did not know of any relatives in Mexico, and, if he were removed, did not know where he would stay. AR 316. He also discussed the support he and his siblings provided to his elderly father. AR 320–24, 344–47; *see also* AR 774–75 (IJ summarizing). Florian testified that Ann Irene "got [Werthmann] in Mexico when he was 13 months old." AR 350. He also testified about the impact Werthmann's removal would have on him, including that he would be "very depressed" if Werthmann were removed. AR 358–59.

The IJ issued a decision that same day. AR 769–87; Habeas Petition 6, Exhibit R. The IJ sustained the allegation and charge relating to the arson conviction, but granted Werthmann's request for a waiver of inadmissibility under 8 U.S.C. § 1182(h)(1)(B) because the IJ found Florian would experience extreme hardship if Werthmann were removed. AR 780–87. Noting that INS had "stipulated to the Court and agreed that the visa petition was approved," the IJ granted Werthmann's application for adjustment of status under 8 U.S.C. § 1255(i). AR 773, 779–87. Werthmann was twenty years old at the time. AR 771. He turned twenty-one seven days later, on December 15, 2000.

B. INS Appeal and the BIA's September 28, 2001 Decision

On January 8, 2001, INS appealed the IJ's decision. AR 754–60, 768; *see also* AR 723–31 (INS brief filed May 14, 2001). INS argued for the first time that Werthmann had waived his application for adjustment of status by failing to file an approved I-130. AR 754–60. INS argued, on appeal to the BIA, that in issuing its decision, the IJ, "over the concerns of [INS] counsel, stated the Service had stipulated, in a prior hearing, that there was, in fact, an approved I-130." AR 756. INS argued that the "Service records reflect no such stipulation," and that the IJ "pressured the Service into proceeding based on his perception that it had been stipulated the I-130 was properly filed." AR 756, 759. *But see* AR 149, 166–67, 277–78, 310–11, 711–12. INS's argument was based on a mistake of fact. The record before the IJ clearly demonstrates that INS had stipulated that Werthmann had an approved I-130 petition.

On September 28, 2001, the BIA remanded to the IJ because it was unclear if Werthmann had an approved I-130 visa petition. AR 690–93. It found that while INS had stipulated to the existence of an approved petition during Werthmann's removal proceedings, the record was "void of an approved I-130 form." AR 693.

10

## C. Remanded Proceedings Before the IJ

At a hearing before the IJ on December 4, 2001, Werthmann's lawyer stated that "after a thorough search with the assistance of an Assistant District Counsel . . . it appears that in 1999 the visa was not approved at the time of the adjustment," and that INS was now (finally) adjudicating Werthmann's I-130 petition. AR 532. On January 2, 2002, INS officially approved Werthmann's I-130 visa petition—over four years after it had been filed, and over a year after INS had stipulated it had been approved. AR 547–48, 651–53.

Werthmann was now over the age of twenty-one. Under the law at that time, because Werthmann was over the age of twenty-one by the time INS officially approved his visa petition, he was no longer a "minor." Therefore, he was no longer eligible for the I-130 immediate relative visa Florian had sought on his behalf over four years earlier. *See* 8 U.S.C. § 1151(b).

Had the I-130 petition been granted before December 15, 2000 (that is, before Werthmann turned twenty-one), Werthmann would have been eligible for an immediate relative visa. Non-citizens may qualify for an immigration visa through certain familial relationships to U.S. citizens. Two of those categories of qualifying relationships include (1) being the minor child of a U.S. citizen ("immediate relative" visa), and (2) being the adult child of a U.S. citizen ("F1" visa). *See* 8 U.S.C. § 1151. As our court has summarized:

11

> Visas are always immediately available to people in the first category—"immediate relatives" of U.S. citizens—but are limited in the other categories. Within the limited categories, visas become available on a "first-come, first-served" basis. To get a place in line, a non-citizen's qualifying relative must file a visa petition, which receives a priority date based on when it was filed. The Department of State's Bureau of Consular Affairs publishes a monthly Visa Bulletin that lists "current" priority dates based on category and country of origin; a visa is immediately available to a non-citizen if his priority date is on or before the corresponding date in the bulletin.

*Tovar v. Sessions*, 882 F.3d 895, 897 (9th Cir. 2018) (internal citations omitted).

Because Werthmann was over the age of twenty-one when his I-130 petition was approved, the visa approval automatically converted to a F1 first-preference family visa subject to the "first-come, first-served" limitations. AR 8; *see* 8 U.S.C. § 1153(a). Werthmann's priority date was September 25, 1997, the date his petition was filed. AR 548. The Department of State's Visa Bulletin listed the "current" priority date for F1 visas for Mexico as April 22, 1994. U.S. Dep't of State, *Visa Bulletin for January 2002,* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2002/visa-bulletin-for-january-2002.html. As a result, a visa was not immediately available. AR 8, 569.

During a hearing on February 27, 2002, the IJ issued an order of removal. AR 6–9, 573. On May 3, 2002, the BIA affirmed because no first-preference family-based visas were available as of that date. AR 2–3. Werthmann was

therefore ineligible to adjust his status at that time.  AR 2.  On May 7, 2002, INS

removed Werthmann to Mexico.  Habeas Petition 7.

A few months later, Congress passed the Child Status Protection Act to fix

the problem of visa applicants "aging out" of a visa category due to INS

delay—the very problem Werthmann encountered.  The Child Status Protection

Act amended the Immigration and Nationality Act to provide that a minor's

eligibility for an immediate relative visa is determined by "the age of the alien on

the date on which the petition is filed," *not* on the date the agency approves the

visa petition.  8 U.S.C. § 1151(f)(1).  That Act took effect on August 6,

2002—three months after the BIA issued its final determination in Werthmann's

case.  *See* Child Status Protection Act § 8, Pub. L. 107-208, 116 Stat. 927

(effective August 6, 2002); *see also Tovar*, 882 F.3d at 897–98 (discussing changes

included in the Child Status Protection Act).

III. Return to the United States and Habeas Corpus Petition

On June 25, 2003—a little over a year after he was removed—Werthmann

was detained in Tijuana, Baja California, Mexico.  Habeas Petition 7, Exhibit V.  A

Mexican Migratory Control Judge found that Werthmann was a United States

citizen without legal authorization to remain in Mexico.  The judge granted

Werthmann "Departure from this Country," which he was to "execute 1 day after

13

he receive[d] notification" from the Migratory Control Department of Mexico or the order would convert to an order of removal. Habeas Petition Exhibit V.

In compliance with Mexico's order, Werthmann returned to the United States on June 26, 2003. Habeas Petition 8. According to Werthmann, upon his arrival at the border the Department of Homeland Security ("DHS") admitted or paroled him into the United States, detained him, and transported him to the San Diego County Jail based on a bench warrant issued by a California Superior Court due to his "failure to report to his probation officer," in connection with his prior arson conviction, after he was deported to Mexico. Habeas Petition 4, 8, Exhibit W. Werthmann's probation was discharged on or about September 18, 2003. Habeas Petition 8. On September 19, 2003, California transferred Werthmann back to DHS custody. Habeas Petition 8. That same day Werthmann filed a habeas corpus petition in the U.S. District Court for the Central District of California. Habeas Petition 12. Now, almost sixteen years later, that converted petition for review is before us.

We are deeply troubled by the inequities in this case. Werthmann was adopted by two U.S. citizens when he was a toddler. After his adoption, he has lived in Mexico only once, during the brief period after he was removed from the United States in May 2002. Mexico considers him a citizen of the United States. His removal in 2002 resulted from INS's delay in adjudicating his visa petition.

Congress has passed two statutes addressing the very problems Werthmann has encountered. Due to delays not attributable to him, Werthmann has not been able to benefit from those statutes.

In light of these grave inequities, we remand to the BIA to allow it to consider reopening Werthmann's case, and thereby to permit any and all arguments that might lead, finally, to an equitable and fair outcome. We retain jurisdiction over any subsequent petitions for review.

**REMANDED.**[1]

---

[1] Werthmann's unopposed motion (Dkt. No. 84) to augment the record is **GRANTED**.